Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/26/2019 09:07 AM CDT

Ann Tran, appellant, v. State of Nebraska
and Nebraska Department of Health and
Human Services, Division of Medicaid
and Long-Term Care, appellees.

___ N.W.2d ___

Filed May 3, 2019.    No. S-17-1303.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.
2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Judgments: Appeal and Error.** An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.
4. **Administrative Law: Statutes.** Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.
5. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.
6. **Administrative Law: Presumptions: Proof.** When challenging the decision of an administrative agency, the presumption under Nebraska law is that the agency's decision was correct, with the burden of proof upon the party challenging the agency's actions.
7. **Administrative Law: Medical Assistance.** The Department of Health and Human Services may impose sanctions against a Medicaid service provider for (1) presenting any false claim for services for payment,

(2) failing to make available to the department records of services provided to Medicaid clients when requested, and (3) breaching the terms of the Medicaid provider agreement.

8. ____: ____. Sanctions available to the Department of Health and Human Services for a Medicaid service provider violation include termination from the Medicaid program, suspension or withholding of payments, recoupment from future payments, or provider education.

9. ____: ____. The decision of the sanction to be imposed for a Medicaid service provider violation is left to the discretion of the director of the Department of Health and Human Services.

10. ____: ____. The director of the Department of Health and Human Services considers the following factors in determining an appropriate sanction for a Medicaid service provider violation: (1) seriousness of the offenses, (2) extent of violations, (3) history of prior violations, (4) prior imposition of sanctions, (5) prior provision of provider education, (6) provider willingness to comply with program rules, (7) whether a lesser sanction will be sufficient to remedy the problem, and (8) actions taken or recommended by peer review groups and licensing boards.

11. **Administrative Law: Courts: Appeal and Error.** In a de novo review by a district court of the decision of an administrative agency, the level of discipline imposed by the agency is subject to the district court's power to affirm, reverse, or modify the decision of the agency or to remand the case for further proceedings.

Appeal from the District Court for Lancaster County: John A. Colborn, Judge. Affirmed.

Julie A. Jorgensen, of Morrow, Willnauer & Church, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Ryan C. Gilbride for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Ann Tran appeals the order of the district court for Lancaster County affirming the decision of the Nebraska Department of Health and Human Services (DHHS) to terminate her status as a Medicaid service provider. We affirm.

## BACKGROUND

Tran immigrated to the United States from Vietnam in 2002. In 2015 and 2016, Tran provided personal assistance services (PAS) to Nebraska Medicaid clients. Tran fulfilled a need for service providers for elderly Vietnamese individuals, especially due to her ability to speak Vietnamese.

On October 7, 2016, DHHS issued a letter to Tran indicating that DHHS was conducting a review of Tran's claims for payment due to overlapping services and that her payments under the Nebraska Medical Assistance Program, also known as Medicaid, had been suspended pending the outcome of the review. The letter stated that the review would be performed "to ensure that funds are only spent on medically necessary and appropriate services." As part of the review, DHHS asked Tran to submit documents, including service needs assessments and authorizations for each client, monthly or weekly work logs, and required billing forms. DHHS advised Tran to conduct a self-audit on all services she provided from May 2015 through October 7, 2016.

At the conclusion of its investigation, DHHS determined that Tran had overlapped services between clients and had failed to provide DHHS documentation of her services. Based on these failures to adhere to the standards for participation in Medicaid, DHHS terminated Tran's provider agreements for good cause. On November 23, 2016, DHHS issued a letter to Tran informing her of her permanent exclusion from the Medicaid program, effective immediately.

Tran timely appealed to DHHS. In her appeal request, Tran admitted she may have overlapped services because of emergency situations. She indicated that her work schedule required flexibility in order to accommodate the special needs of her clientele. Tran further admitted that she did not retain copies of her weekly timesheets. Tran apologized and said that the audit was a learning experience for her.

An administrative hearing was held on March 15, 2017, after which the DHHS director of the Division of Medicaid

and Long-Term Care (Director) issued a written order affirming DHHS' action. The Director found that Tran "billed for overlapping services and when requested to present documents to support billing admitted that she does not keep documentation." The Director found that Tran's actions were contrary to the Medicaid regulations and that DHHS' action was proper. Tran timely filed a petition for review in district court pursuant to the Administrative Procedure Act (APA), Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2014 & Cum. Supp. 2016).

On November 28, 2017, the district court entered an order affirming DHHS' decision to terminate Tran as a Medicaid service provider. The court found that DHHS' decision was supported by the evidence and applicable authority. The court rejected Tran's argument that she was never informed that she was required to retain records of the services she provided. The court found that Tran's (1) presentment of false claims for payment, (2) failure to make available to DHHS her records of services, and (3) breach of the terms of her provider agreements each constituted grounds for sanctions, and that the sanction imposed of permanent exclusion from the Medicaid program was within the Director's discretion. Tran timely appealed from the adverse decision of the district court. We moved the appeal to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this State.[1]

## ASSIGNMENTS OF ERROR

Tran assigns, restated and consolidated, that the district court erred in (1) finding that Tran billed for overlapping services and (2) affirming DHHS' excessive sanction of permanent exclusion from the Medicaid program.

## STANDARD OF REVIEW

[1-3] A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed,

---

[1] See Neb. Rev. Stat. § 24-1106 (Cum. Supp. 2018).

vacated, or modified by an appellate court for errors appearing on the record.[2] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3] An appellate court, in reviewing a district court's judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.[4]

## ANALYSIS

Tran argues on appeal that (1) the court's finding that Tran billed for overlapping services is not based on competent evidence and (2) DHHS' sanction to permanently exclude Tran from the Medicaid program is arbitrary and capricious.

[4,5] Agency regulations properly adopted and filed with the Secretary of State of Nebraska have the effect of statutory law.[5] Statutory language is to be given its plain and ordinary meaning, and we will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[6]

Medicaid is administered by DHHS.[7] DHHS is required by state and federal law to review activities related to the kind, amount, and frequency of Medicaid services billed to ensure that funds are spent only for medically necessary and

---

[2] *Leon V. v. Nebraska Dept. of Health & Human Servs.*, 302 Neb. 81, 921 N.W.2d 584 (2019); *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017).

[3] *Leon V., supra* note 2.

[4] *Id.*; *Lingenfelter v. Lower Elkhorn NRD*, 294 Neb. 46, 881 N.W.2d 892 (2016).

[5] See, *Leon V., supra* note 2; *Merie B. on behalf of Brayden O. v. State*, 290 Neb. 919, 863 N.W.2d 171 (2015).

[6] *Id.*

[7] Neb. Rev. Stat. § 68-908(1) (Reissue 2018); 471 Neb. Admin. Code, ch. 1, § 001.01 (2009).

appropriate services.[8] Medicaid covers PAS under the program guidelines and limitations.[9] Medicaid PAS are typically provided in a client's home.[10] These services include, for example, providing assistance with hygiene, toileting, mobility, nutrition, and medications.[11]

To be eligible to participate in Medicaid, each provider must have an approved service provider agreement (SPA) with DHHS.[12] Each PAS provider must adhere to the provider standards listed in the SPA.[13] DHHS may terminate a provider's SPA for failing to meet the conditions of the agreement.[14] By signing the SPA, a provider agrees to:

> 1. Fully meet standards established by the federal Department of Health and Human Services, and any applicable state and federal laws governing the provision of their services;
>
> 2. Provide services according to the regulations and procedures of [DHHS].
>
> . . . .
>
> 6. Submit claims which are true, accurate, and complete; [and]
>
> 7. Maintain records for all services provided for which a claim has been made, and furnish, on request, the records to [DHHS].[15]

On July 8, 2015, Tran signed an SPA with DHHS. In doing so, Tran agreed to comply with applicable DHHS regulations, policies, and procedures. Tran assured that she would

---

[8] 471 Neb. Admin. Code, ch. 1, § 004.03 (2003).

[9] 471 Neb. Admin. Code, ch. 1, § 002 (2009).

[10] See, 42 C.F.R. 440.167(a)(3) (2018); 471 Neb. Admin. Code, ch. 15, § 001.02 (2004).

[11] 471 Neb. Admin. Code, ch. 15, § 003.01 (2004).

[12] 471 Neb. Admin. Code, ch. 2, § 001.03 (2015).

[13] 471 Neb. Admin. Code, ch. 15, § 006.01 (2013).

[14] 471 Neb. Admin. Code, ch. 2, § 001.03.

[15] *Id.*

document and retain records "to fully disclose the extent of the services provided to support and document all claims, for a minimum period of six years," and allow "[state] offices responsible for program administration or audit to review services records." Tran executed an addendum to the agreement in which she agreed to provide PAS for Medicaid recipients and assured that she would "bill only for services which are authorized and actually provided." On July 17, 2016, Tran electronically signed and submitted a new SPA, in which she agreed to adhere to all conditions of the Nebraska Medicaid regulations and acknowledged that she may be terminated from the program if any of the conditions were violated. From May 2015 through October 2016, Tran provided PAS to Medicaid clients pursuant to the DHHS-approved agreements and submitted certified timesheets in support of claims for payment.

## COMPETENT EVIDENCE OF
## OVERLAPPING SERVICES

Tran argues the court's determination that she billed for overlapping services is not supported by the record. She claims that she provided her clients services for the full number of hours that were authorized. She argues that DHHS initiated the audit based on inaccurate information and that DHHS failed to account for its "mistaken belief" prior to terminating Tran as a Medicaid service provider.[16]

The administrative record established that DHHS' investigation of Tran began based on a concern that Tran had overlapped her Medicaid service hours with other employment. Tran worked as a substitute teacher at Lincoln Public Schools (LPS) on an on-call basis. On September 30, 2016, DHHS' program integrity unit received a fraud referral concerning Tran's billing practices. The record showed that, for example, Tran submitted claims to DHHS for providing PAS to Medicaid clients on September 24, 2015, from 8 a.m. to noon and 12:30

---

[16] Brief for appellant at 11.

to 3:30 p.m. Yet, Tran's payroll information at LPS showed that she worked on September 24 from 8:15 a.m. to 3:45 p.m. DHHS submitted audit documents into the record which identified 41 instances, from September 2015 through September 2016, in which Tran overlapped Medicaid service hours with hours worked at LPS.

Upon learning of DHHS' investigation, Tran contacted DHHS' program integrity investigator to inform her that LPS' payroll information did not accurately reflect the hours that Tran had actually worked at LPS. Prior to the hearing, a human resources official for LPS submitted an affidavit informing DHHS of LPS' payroll practices. The official explained that "[w]hen a substitute works 3.75 hours or more it is reflected as a full day on payroll. The time entries displayed on the payroll summaries for our substitutes are therefore not necessarily accurate as to the employee's actual hourly schedule." In addition, a substitute at LPS receives a full day of payment even if the need for the substitute is canceled, and the payroll system would not reflect that a payment had been made for a canceled assignment. On cross-examination, the investigator admitted this meant that portions of DHHS' audit documents which reflected the hours that Tran worked at LPS were not accurate.

Separate from Tran's employment with LPS, DHHS identified several other instances in which Tran had billed for services which overlapped between Medicaid clients. For example, DHHS' audit documents showed that in September 2015, Tran overlapped services between clients M.D. and X.C. for a period of at least 4 hours once a week for 4 consecutive weeks. Tran similarly overlapped services between clients for periods of between 2 and 4 hours on a weekly basis in October 2015. Although less frequent and for shorter periods of time, the record shows instances that Tran overlapped services between clients in November and December 2015 and in January, February, May, and September 2016. These instances were unrelated to Tran's employment with LPS.

Tran testified that she had a practice of completing her service provider timesheets approximately 1 week prior to actually providing services to clients. She admitted that after she provided the services, she did not correct the billing documents prior to submitting them. As a result, the timesheets Tran submitted to DHHS were not an accurate reflection of the time periods she actually provided services to Medicaid clients. Tran testified that the timesheets accurately stated the total number of hours that she worked, but were based on an estimated schedule.

In evaluating Tran's appeal, both DHHS and the district court declined to consider the billing time that overlapped between Tran's Medicaid and LPS work. DHHS' decision to exclude Tran from participating as a Medicaid service provider was instead based, in part, on "overlapping services between clients." The district court affirmed and stated that irrespective of Tran's employment at LPS, "there were several other instances where [Tran] overlapped services for Medicaid clients."

[6] When challenging the decision of an administrative agency, the presumption under Nebraska law is that the agency's decision was correct, with the burden of proof upon the party challenging the agency's actions.[17] Tran disputed that there was any factual overlap in services provided. She testified that she provided all of the hours that were authorized to each of her clients, provided additional hours free of charge, and even after the audit continued to provide services to her clients without pay. Each of her four Medicaid clients submitted affidavits stating that "[Tran] always completed the allotted number of hours for me even if the actual times the services were provided were slightly different than what was scheduled." Although this evidence supports Tran's position, Tran has not proved that the district court failed to base its

---

[17] *Gridiron Mgmt. Group v. Travelers Indemnity Co.*, 286 Neb. 901, 839 N.W.2d 324 (2013).

decision on competent evidence. The court articulated in its order that it considered Tran's evidence and determined that her evidence was "outweighed by the evidence of overlapping services and inaccurate service provider timesheets in the record."

Tran's explanations as to why her billing timesheets showed that she overlapped services do not withstand scrutiny. Her testimony was that she filled out her timesheets in advance based on an estimated schedule. Accepting Tran's testimony as true, the timesheets should not have shown any overlapping of services. The impact of Tran's overlapped billing is that she billed for work that was not performed, because she could not have provided services to two clients in different locations at the same time. Tran argued that her clients were elderly and that servicing two clients within the same timeframe was necessary in emergency situations. However, the PAS regulations indicate the correct response to an emergency is to locate temporary coverage when unable to provide services as scheduled, not to submit bills for both clients.[18]

In short, Tran agreed to comply with DHHS' billing standards and practices, Tran did not comply with these conditions, and Tran admitted in her testimony and briefs that she did not comply with these conditions. As a result, we must conclude that the district court's factual findings that Tran submitted bills which overlapped services between Medicaid clients is supported by competent evidence in the record. Moreover, the record contains independent grounds for terminating Tran's SPA's based on her complete failure to maintain required records and submit those records to DHHS upon request, which Tran does not challenge on appeal. Tran's first assignment of error is without merit.

EVIDENCE SUPPORTED SANCTION

[7-10] DHHS may impose sanctions against a provider for (1) presenting any false claim for services for payment, (2)

---

[18] See 471 Neb. Admin. Code, ch. 15, § 006.05 (2005).

failing to make available to DHHS records of services provided to Medicaid clients when requested, and (3) breaching the terms of the Medicaid provider agreement.[19] The sanctions available to DHHS include termination from the Medicaid program, suspension or withholding of payments, recoupment from future payments, or provider education.[20] The decision of the sanction to be imposed is left to the discretion of the Director.[21] The Director considers the following factors in determining an appropriate sanction: (1) seriousness of the offenses, (2) extent of violations, (3) history of prior violations, (4) prior imposition of sanctions, (5) prior provision of provider education, (6) provider willingness to comply with program rules, (7) whether a lesser sanction will be sufficient to remedy the problem, and (8) actions taken or recommended by peer review groups and licensing boards.[22]

DHHS must notify the provider at least 30 days before the effective date of the sanction, unless extenuating circumstances exist, and shall give the provider an opportunity to submit additional information or to appeal the sanction.[23] The provider must file the appeal within 30 days of the date of the notice of the sanction.[24] When a sanction is imposed, DHHS shall give general notice to the public of the restriction, its basis, and its duration.[25]

Tran argues that DHHS abused its discretion in permanently excluding Tran from the Medicaid program. Tran contends that there was no intent to deceive DHHS and that she fully cooperated with the audit and wanted to bring her billing records into compliance. She argues that under the circumstances, DHHS

---

[19] 471 Neb. Admin. Code, ch. 2, § 002.03 (2015).

[20] 471 Neb. Admin. Code, ch. 2, § 002.04A (2015).

[21] 471 Neb. Admin. Code, ch. 2, § 002.05 (2015).

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

should have considered lesser sanctions such as requiring provider education.

As indicated, on an appeal from an order of the district court under the APA, we review the court's decision for errors appearing on the record. Our inquiry is whether the court's decision is supported by competent evidence and the law, and is neither arbitrary, capricious, nor unreasonable. Here, the district court concluded that permanently excluding Tran from the Medicaid program was an appropriate sanction based on the applicable law and facts in evidence.

[11] We agree that the sanction imposed against Tran was harsh, and that under the circumstances, we may have imposed a different sanction. However, it is not for this court to fashion the sanction in the first instance and we recognize that reasonable people may disagree regarding the appropriate sanction to impose. As we addressed in *Prokop v. Lower Loup NRD*,[26] a district court's de novo review extends to the entirety of an administrative order, and a district court in reviewing an administrative order is required to make independent factual determinations and reach independent conclusions with respect to the matters at issue. In a de novo review by a district court of the decision of an administrative agency, the level of discipline imposed by the agency is subject to the district court's power to affirm, reverse, or modify the decision of the agency or to remand the case for further proceedings.[27] Accordingly, pursuant to its de novo review, the district court had the ability to modify the sanction imposed, but concluded the sanction imposed was supported by the evidence.

However, our review is limited to reviewing an order of a district court under the APA for errors appearing on the record; the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable; and we will not substitute

---

[26] *Prokop v. Lower Loup NRD*, 302 Neb. 10, 921 N.W.2d 375 (2019).

[27] See *Rainbolt v. State*, 250 Neb. 567, 550 N.W.2d 341 (1996).

our factual findings for those of the district court where competent evidence supports those findings.[28] Therefore, we find that the district court reasonably concluded the sanction was supported by the evidence and that the sanction was not so disproportionate to rise to the level of arbitrary or capricious action.

Tran is correct that DHHS chose to implement one of the most serious sanctions within its authority by terminating her participation in Medicaid. Though DHHS did not discuss the factors that it considered in determining the sanction, based on the record, it is evident that DHHS gave significant consideration to the extent of Tran's violations. It is undisputed that Tran failed to properly record the times she worked for specific clients which resulted in overlapping billings. Tran admitted that she received nearly $880 in overpayments. Further, Tran failed to maintain proper billing records that were generated throughout her time as a service provider. As a result, Tran was unable to provide DHHS copies of the records when requested. The lack of recordkeeping made it impossible for Tran to conduct the self-audit required by DHHS as part of its review. It was not unreasonable for DHHS to consider these failures to adhere to the requirements under the SPA and DHHS regulations as grounds for expulsion from the program.[29]

While Tran indicated a willingness to comply with program rules, the evidence is clear that Tran did not comply. Tran argued throughout this process that she was unaware of the billing requirements and that she knew of other service providers who did not follow the requirements. However, the SPA and DHHS regulations clearly set forth Tran's duty to comply and the record shows that Tran was aware that breaching the terms of her agreements could result in her termination. It

---

[28] *Leon V., supra* note 2.

[29] See, e.g., *Siddiqui v. Com'r, N.Y. State DSS*, 170 A.D.2d 922, 566 N.Y.S.2d 970 (1991); *Matter of Camperlengo v. Perales*, 120 A.D.2d 883, 502 N.Y.S.2d 310 (1986).

would not be unreasonable for DHHS to evaluate the evidence of Tran's billing practices and recordkeeping and conclude that it would be best if Tran no longer participated in the program. Even though Tran is correct that DHHS could have imposed education requirements on Tran rather than terminate her services, the regulations do not mandate that any particular form of sanction be imposed against a service provider who fails to comply with program standards.

We emphasize the highly deferential standard of review applicable to the Director's decision of the appropriate sanction. As explained, we do not find the district court's affirmance of the sanction imposed by DHHS to be arbitrary, capricious, or unreasonable. We will not require DHHS to continue to contract with service providers who have failed to comply with the requirements of the Medicaid program. This assignment of error is without merit.

## CONCLUSION

We affirm the decision of the district court.

Affirmed.