Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/16/2021 08:11 AM CDT

Blake Swicord, appellant, v. Police Standards
Advisory Council and Nebraska Commission
on Law Enforcement and Criminal
Justice, also known as Nebraska
Crime Commission, appellees.

___ N.W.2d ___

Filed April 23, 2021.   No. S-20-411.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.
2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Rules of the Supreme Court: Appeal and Error.** Where a brief of a party fails to comply with the mandate of Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2014), an appellate court may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error.
4. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

Appeal from the District Court for Hall County: Ryan C. Carson, Judge. Affirmed.

Megan E. Shupe and Steven M. Delaney, of Reagan, Melton & Delaney, L.L.P., for appellant.

Douglas J. Peterson, Attorney General, and James A. Campbell, Solicitor General, for appellees.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

PAPIK, J.

After serving as a law enforcement officer in Georgia, Blake Swicord moved to Nebraska hoping to do the same here. As part of an application to obtain certification to work in law enforcement in Nebraska, Swicord submitted a form in which he answered questions regarding his personal background. The director of the Nebraska Law Enforcement Training Center (NLETC) denied the application, concluding that Swicord provided answers that were untrue and failed to disclose requested information. Swicord unsuccessfully challenged the denial of his application first in administrative proceedings and then in a judicial review proceeding in district court. He now appeals the district court's order to us. We find no error in the decision of the district court and thus affirm.

## BACKGROUND

*Swicord's Application for*
*Reciprocity Certification.*

From 1995 until 2017, Swicord served as a law enforcement officer in the State of Georgia. He began his law enforcement career as a lieutenant in a county sheriff's department and later became a sergeant in the Georgia State Patrol. The Georgia State Patrol terminated his employment in December 2017.

After his employment in Georgia was terminated, the Seward County sheriff's office hired Swicord, and he moved to Nebraska. The Seward County sheriff's office filed an application on Swicord's behalf with NLETC, seeking reciprocity certification. Reciprocity certification allows law enforcement officers who are certified in other jurisdictions and who meet other criteria to obtain Nebraska certification without participating in basic officer training. See 79 Neb. Admin. Code, ch. 3 (2016).

Among the materials that must be included in an application for reciprocity training is a "Personal Character Affidavit."

See 79 Neb. Admin. Code, ch. 8, § 008.01A(3) (2005). The Personal Character Affidavit that Swicord submitted is a form document, which instructs applicants to answer various questions regarding their personal background. The first page of the form document instructs applicants to "answer all questions and sections truthfully" and states that "[f]alsification or omission of information is grounds for denial to admission to an academy and denial of or revocation of your law enforcement certification in Nebraska." The first page of the document also states, "IF YOU HAVE ANY DOUBTS WHETHER SOMETHING OR SOME TYPE OF VIOLATION SHOULD BE INCLUDED, LIST IT ON THE AFFIDAVIT. FAILURE TO LIST A VIOLATION MAY RESULT IN TERMINATION OF TRAINING, DENIAL OF CERTIFICATION, AND POSSIBLE CRIMINAL PENALTIES." (Emphasis in original.)

One of the questions on the form relevant to this appeal directed the applicant to answer if he or she had "**ever**, either as an adult or juvenile, been **cited**, **arrested**, **charged**, or **convicted** for a violation of **any** law (except moving traffic violations to be reported under the next question, and except for minor parking violations." (Emphasis in original.) If answered affirmatively, the Personal Character Affidavit form directed the applicant to provide information regarding the charge, the arresting agency, the date of the incident, whether the applicant was booked into jail, convictions stemming from any arrest, and the disposition of the case; the form also contained a space for the applicant to include a "[n]arrative" regarding the incident. Swicord checked the box indicating "No."

Swicord also answered "No" to a number of questions regarding professional licenses or certifications. These questions asked, "Have you ever had a professional license that you hold be under investigation?"; "Is a professional license that you currently hold under investigation?"; and "Have you had a law enforcement certification or any other professional license/certificate revoked or suspended in this state or any other state?"

The conclusion of the Personal Character Affidavit form directed the applicant to certify that "there are no willful misrepresentations, omissions, or falsifications in the for[e]going statements and answers to questions and that all statements and answers are true and correct to the best of my knowledge and belief." Swicord signed the certification.

In addition to the Personal Character Affidavit, Swicord also signed and submitted a notarized document entitled "Authority to Release Information." In it, Swicord authorized "a review and full disclosure of any and all records or files (or any part thereof) pertaining to me, including but not limited to . . . records, files or documents regarding any arrests, convictions or other criminal investigations or charges involving me." He also authorized the release of information to NLETC "concerning all of the above mentioned areas, or any other information which has a bearing on my fitness or ability to become trained and certified as a law enforcement officer."

*Denial of Swicord's Application*
*for Reciprocity Certification.*

Brenda Urbanek, the director of NLETC, denied Swicord's application for reciprocity certification. She issued a letter in which she listed several reasons for her decision. In the letter, Urbanek stated that she had performed a background check on Swicord and learned that he had been arrested for alleged battery in January 2018 and that the "Georgia Peace Officer Standards and Training Council" (Georgia POST) had voted to revoke his law enforcement certification in December 2018. She noted that Swicord had failed to disclose these facts in the Personal Character Affidavit.

Regulations permit individuals or agencies aggrieved by decisions of the director of NLETC "related to admission to training, certification status, and discipline" to "appeal" by, among other things, presenting specific reasons in writing for the director to review and reconsider the decision. 79 Neb. Admin. Code, ch. 13, § 004.02A (2005). Swicord pursued such an appeal. In a letter to Urbanek, Swicord addressed each

of the reasons Urbanek identified for her decision denying Swicord reciprocity certification. As to his negative response to the question in the Personal Character Affidavit regarding prior arrests, Swicord stated, "I must apologize as I understood the question to be about convictions." As to his negative response to the questions regarding investigations regarding a professional license, he stated, "I have never considered my peace officer certification to be a 'license' and so that is why I marked those boxes as such."

Urbanek denied Swicord's appeal. In a letter, she stated that she had reviewed the documents submitted by Swicord but did not find that any new or mitigating information was provided.

*Police Standards Advisory Council.*

Pursuant to regulations, Swicord appealed Urbanek's decision to the Police Standards Advisory Council (the Council). See 79 Neb. Admin. Code, ch. 13, § 004.02E. The Council held an administrative hearing.

At the hearing, the Council received evidence that the Georgia POST investigated Swicord's fitness to serve as a law enforcement officer. The investigation was opened shortly after Swicord's employment with the Georgia State Patrol was terminated in December 2017. After the investigation, the Georgia POST voted to revoke Swicord's Georgia law enforcement certification. Swicord appealed the decision, and the appeal remained pending at the time of the hearing.

Swicord testified that at the time he submitted the Personal Character Affidavit, he knew about the Georgia POST's investigation. He explained that he did not believe the questions in the Personal Character Affidavit regarding past or present investigations into a professional license covered the Georgia POST investigation. He testified that the eligibility to serve as a law enforcement officer in Georgia is referred to as a "certification" and never as a "license." He claimed that he thought the questions "were referring to like my driver's license, had it ever been suspended or revoked" or "[m]aybe you were

certified to have a license [as] a chiropractor, . . . that you practiced in the medical field or something of that nature."

The Council also received evidence that Swicord was arrested in Georgia in January 2018 for suspected battery after a physical altercation with his girlfriend. Swicord admitted that he had been arrested for suspected battery, but testified that the prosecutors did not pursue the charges. He testified that he denied previously being arrested in the Personal Character Affidavit based on the advice of an attorney who "practices in Georgia and Alabama."

Swicord called law enforcement officers from Georgia and Nebraska to testify on his behalf. Each testified positively regarding Swicord's professionalism, work ethic, and character.

At the end of the hearing, the Council voted to uphold Urbanek's decision denying reciprocity certification on the grounds that Swicord failed to disclose his arrest and that his professional license was under investigation. The Council later issued a unanimous written decision. In the written decision, the Council found that Swicord "knowingly made a false statement when he indicated that he had never been arrested." The order expressly stated that the Council found Swicord's explanations for not disclosing the arrest not credible. The Council also determined that Swicord's failure to disclose the Georgia POST's investigation constituted a knowing falsification. It concluded that Swicord's "actions in the application process demonstrate to this body that [Swicord] cannot be . . . characterized as being truthful, honest or trustworthy."

*District Court.*

Swicord sought review of the Council's decision in the district court for Hall County by filing a petition for review pursuant to the Administrative Procedure Act. See Neb. Rev. Stat. § 84-917 (Reissue 2014). The district court affirmed the Council's decision. It found that Swicord knowingly made false statements in his responses on the Personal Character Affidavit and that thus denial of his application for reciprocity certification was warranted.

## ASSIGNMENTS OF ERROR

Our rules of appellate practice require that the appellant's initial brief include a section containing a "separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2014). Swicord's initial brief does not contain a separate section assigning error to the district court.

In his reply brief, Swicord acknowledges the absence of an assignments of error section, but points out that his initial brief does contain section headings, each of which asserts that the district court erred in various respects. He requests that we consider those headings as assignments of error, but we must decline. We have very recently explained that we will not treat headings as a substitute for properly placed and properly designated assignments of error. See *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, ___ N.W.2d ___ (2021).

## STANDARD OF REVIEW

[1-4] Ordinarily, a judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Tran v. State*, 303 Neb. 1, 926 N.W.2d 641 (2019). When reviewing an order of the district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Tran v. State, supra*. However, where a brief of a party fails to comply with the mandate of § 2-109(D)(1)(e), we may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. See *Estate of Schluntz v. Lower Republican NRD*, 300 Neb. 582, 915 N.W.2d 427 (2018). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected

would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

## ANALYSIS

In his reply brief and again at oral argument, Swicord argued that even under a plain error standard of review, we should reverse the order of the district court upholding the denial of Swicord's application for reciprocity certification. Swicord contends that the district court plainly erred because, under Neb. Rev. Stat. § 29-3523 (Cum. Supp. 2018), he was legally entitled to deny that he had been arrested; because his responses in the Personal Character Affidavit did not justify the denial of reciprocity certification; and because the Council exceeded its authority by issuing a written order commenting on his honesty and trustworthiness. We take up these arguments below, but, as we will explain, find no plain error.

*§ 29-3523.*

There is no dispute that Swicord's answer to the arrest question in the Personal Character Affidavit was factually inaccurate. Swicord asserted he had not ever been "cited, arrested, charged, or convicted for a violation of any law" (emphasis omitted), when, as he now acknowledges, he had previously been arrested for alleged battery. Swicord contends, however, that even if his response was factually inaccurate, § 29-3523 legally entitled him to respond as he did.

Swicord points to two subsections of § 29-3523 in support of his argument. The first, § 29-3523(3)(a), generally provides that when "no charges are filed as a result of the determination of the prosecuting attorney," arrest records are to be removed from the public record "after one year from the date of arrest." Swicord claims that because prosecutors in Georgia declined to charge him following his arrest, he was entitled to deny that he was arrested.

Swicord claims that § 29-3523(8) also requires that his assertion he had never been arrested be treated as truthful. It provides:

> In any application for employment, bonding, license, education, or other right or privilege, any appearance as a witness, or any other public inquiry, a person cannot be questioned with respect to any offense for which the record is sealed. If any inquiry is made in violation of this subsection, the person may respond as if the offense never occurred.

The district court held that § 29-3523 did not give Swicord a right to deny he had previously been arrested. It reasoned that § 29-3523(3) only addresses Nebraska criminal records. It also noted that even if § 29-3523(3) applied to Swicord's arrest records in Georgia, § 29-3523(1)(c) provides an exception. That subsection allows the dissemination of criminal history record information if "the subject of the record" has made a "notarized request for the release of such record." The district court observed that Swicord executed a notarized release authorizing NLETC to obtain, among other things, any records regarding arrests. We do not believe the district court committed plain error by concluding that § 29-3523(3) did not give Swicord a right to deny his prior arrest.

As for § 29-3523(8), the district court concluded that because there was no evidence that the record of Swicord's Georgia arrest was sealed, the statute did not apply. Again, we do not believe the district court committed plain error, either by concluding the statute applies only to sealed records or by finding that there had been no showing that the records of Swicord's arrest were sealed.

*Denial of Reciprocity Certification.*

Swicord also contends that the district court plainly erred by concluding that his responses on the Personal Character Affidavit justified denial of reciprocity certification. We do not understand Swicord to contend that it is improper for NLETC to deny reciprocity certification when an applicant has made deliberate misrepresentations in the application process. Indeed, the relevant regulations appear to foreclose any such argument. See 79 Neb. Admin. Code, ch. 8, § 005.04A2

(2005) ("[a]pplicants are under a duty to disclose any and all information that may affect the applicant's qualifications for entrance into certification training. Any deliberate omissions, falsification, and/or misrepresentations made on the application or through the application process, including the background investigation, are grounds for denial of entrance into a Training Academy, suspension from training, or termination of training"). Rather, we understand Swicord to contend that his responses on the Personal Character Affidavit that are at issue here were not deliberate falsifications but, at most, honest mistakes.

In support of his argument that he did not make any deliberate omissions or misrepresentations, Swicord emphasizes his testimony that he was advised by counsel he could deny his prior arrest. He also points to his testimony that he believed that the questions regarding past or present investigations of a professional license did not cover the investigation of his Georgia law enforcement certificate.

Swicord cannot show plain error, however, merely by pointing to his own testimony. Even under our ordinary standard of review for judicial review actions under the Administrative Procedure Act, we will not substitute our factual findings for those of the district court where competent evidence supports the district court's findings. See *Tran v. State*, 303 Neb. 1, 926 N.W.2d 641 (2019). We will not impose a less deferential standard for factual findings on plain error review. See, e.g., *U.S. v. Johnson*, 874 F.3d 990, 1003 n.3 (7th Cir. 2017) ("plain error standard is more deferential to the district court than clear error analysis"). Accordingly, in order to find plain error, we would have to conclude that, at a minimum, the district court's conclusion that Swicord made knowing omissions and misrepresentations was not supported by competent evidence. We do not believe that is the case.

Although Swicord testified that he believed his responses were accurate, the district court pointed to other evidence in the record in the course of concluding otherwise. It agreed

with the Council's determination that Swicord's explanations for not disclosing his arrest were not credible, noting that Swicord offered different reasons for the denial in his letter to Urbanek than he offered at the administrative hearing. The district court also relied on evidence in the record when it found that Swicord made knowing misrepresentations in response to the questions regarding investigations of a professional license. It observed that there was evidence in the record that, in Georgia, a law enforcement certificate was, at least some of the time, referred to as a "license." It also pointed out that a question in the Personal Character Affidavit form referred to "'a law enforcement certification or *any other professional license*/certificate'" (emphasis supplied), and concluded that this suggested that the terms were used interchangeably. Finally, it emphasized that the Personal Character Affidavit specifically instructed that if the applicant had any doubts about whether disclosure was required, the applicant should err on the side of disclosure.

Because we find that competent evidence supported the district court's determination that Swicord made knowing misrepresentations or omissions in the Personal Character Affidavit, we find that the district court did not plainly err by upholding the denial of Swicord's application for reciprocity certification.

*Council's Authority.*

Finally, Swicord argues that the Council exceeded its authority by commenting on Swicord's honesty and trustworthiness in its written decision. Swicord claims that the district court plainly erred by allowing the written decision to stand.

It is not clear to us whether Swicord contends that the Council lacked authority to issue *any* written decision or whether he merely contends that it lacked authority to comment on Swicord's honesty and trustworthiness. In either case, we discern no plain error. The written decision to which Swicord objects contained the Council's findings of fact and

conclusions of law. The Administrative Procedure Act requires that decisions by an agency in a contested case be accompanied by findings of fact and conclusions of law. See Neb. Rev. Stat. § 84-915 (Reissue 2014). Further, the applicable regulations list as a qualification for reciprocity certification that the applicant "possess good character as determined by a thorough background investigation." 79 Neb. Admin. Code, ch. 8, § 005.01G (2005). Those same regulations provide that a person of good character "[c]an be characterized as being honest, truthful and trustworthy." *Id.* at § 005.02A5. Swicord's honesty and trustworthiness were thus relevant to the decision to approve reciprocity certification. We see no basis to conclude that the district court plainly erred by allowing the Council's written decision to stand.

## CONCLUSION

Because we find that the district court did not commit plain error in affirming the decision of the Council, we affirm.

Affirmed.