IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

KILANI T. V. MEAD E.-W.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

KILANI T., ON BEHALF OF A MINOR CHILD, RIVER W.-T., APPELLEE,

V.

MEAD E.-W., APPELLANT.

Filed December 2, 2025.    No. A-25-366.

Appeal from the District Court for Keith County: MICHAEL E. PICCOLO, Judge. Affirmed.

Mead E.-W., pro se.

No brief for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

RIEDMANN, Chief Judge.

## INTRODUCTION

Mead E.-W. appeals from the order of the district court for Keith County renewing the protection order against him in favor of his and Kilani T.'s minor son, River W.-T. Mead attempted to appeal from the order renewing the domestic abuse protection order in favor of Kilani, but that appeal was dismissed for failure to file a brief. See *Kilani T. v. Mead E.-W.*, A-25-362 (August 27, 2025). Therefore, the only case before us is the renewal of the protection order in favor of River, which we review for plain error only because Mead has failed to properly assign any errors. Finding no plain error by the district court, we affirm.

## BACKGROUND

On April 23, 2024, Kilani filed petitions and affidavits requesting that domestic violence protection orders be issued against Mead in favor of her and River. In the petition and affidavit filed on behalf of River, who was then 6 months old, Kilani alleged the following.

- 1 -

In March 2024, Kilani was watching the baby monitor from her phone while at work. Through the baby monitor, she heard her then boyfriend, Mead, talking on the phone to someone and say, "Man Im [sic] drunk as fuck" and make references to doing drugs. Kilani knew at that point that she needed to leave work because of how Mead typically acted while under the influence.

Kilani left work and, upon arriving at her home, she did not speak to Mead but went to check on River. Mead became angry she was ignoring him and began to shove her. He then held River over her head and told her to leave otherwise he would "'do something stupid'[,] insenuating [sic] he would drop [River]." Kilani continuously asked Mead to stop but he continued yelling while holding River. She was "very afraid [Mead] would hurt" him.

Kilani attempted to grab River, but Mead "raised his fist at [her]." He then ran into the bedroom, nearly falling while holding River. Kilani was afraid to call the police because she feared Mead would hear her and retaliate by hurting her or River, so she texted her boss, who lived nearby, and asked her to come over.

While waiting for her boss to arrive, Mead continued to scream at Kilani while holding River. Kilani heard Mead say to River "you're probably not even mine[,] fucker." Eventually Kilani's boss arrived and came inside the home. Kilani attempted to take River and Mead tried to stop her. Kilani then told Mead she did not "want to have to call the police" and asked Mead to let her take River. Mead complied, and Kilani and River left the home with her boss.

The petition and affidavit also stated that Mead had another child with whom he was only allowed supervised visitation because of his history of violence and drug and alcohol abuse. The filing contained several attachments, including the statements of Kilani's boss and her coworkers who had also heard Mead yelling over the baby monitor while River cried.

On the same day the petition and affidavit was filed, the district court granted an ex parte protection order in favor of River. It was to be in effect until April 24, 2025.

On April 7, 2025, Kilani filed for renewal of River's protection order. The accompanying petition and affidavit stated that Mead's patterns had not changed, considering he was presently incarcerated for another domestic violence case, and she was afraid he was going to hurt either her or River if the protection order expired. Kilani also stated that Mead had attempted to contact her through his mother while he was incarcerated, which showed her that "he had no interest in staying no contact," and she was afraid he would try to contact her more often or show up at her home. She explained that he was angry she had obtained the initial protection order, and she was afraid he would retaliate.

A show cause hearing was held later that month. Both Kilani and Mead appeared at the hearing, but in lieu of live testimony, the court ordered affidavits to be submitted.

Kilani submitted several affidavits, including her own in which she stated that she had suffered physical and mental abuse over "many years" at the hands of Mead and did not feel safe knowing he may come back into contact with her or River. She felt both she and River had benefitted from having a protection order in place and she did not want River exposed to Mead's behavior, nor did she want to risk being abused again.

Regarding the March 2024 incident, Kilani's affidavit explained that she still suffered from memories of the event. Mead had put River at risk of harm by almost dropping him and holding him over her head, and she was afraid to call anyone because she feared Mead would hurt her or

River. She also alleged that River was not the only child that Mead had put in danger and that he had domestic assault cases with three different women over the preceding 7 years.

Kilani also did not believe that Mead had changed since her original protection order was granted. She attested that, while incarcerated in January 2025, Mead had tried, through his mother, to communicate with and apologize to her. She explained that this showed the "cycle was still repeating" as he always came "back with sorrys [sic] and apologies and swearing he's a changed man"; meanwhile, he was incarcerated on charges for "the same thing he ha[d] done to [her] for years."

Kilani also submitted the affidavit of M.R. M.R. had been in a relationship with Mead for 8 or 9 months when, in November 2024, he was arrested on domestic violence charges after "beating the crap out of [her]." Her affidavit stated Mead had been incarcerated on these charges since.

M.R.'s affidavit further expressed that she was worried for River's safety if Mead were to be released from jail because he was "unpredictable and scarily dangerous." She stated that Mead was capable of "seriously injuring or killing someone, and [she was] worried that could possibly end up being his son River if he were to have access to him again."

Mead submitted his own affidavit to the court. His affidavit predominately focused on the time he had missed out on with River by not being allowed contact with him during the previous year. He highlighted the importance of the relationship between fathers and sons and expressed his belief that River "should and can have a father who wants to be in his life." He additionally acknowledged that he previously had an uncontrolled drinking problem but stated he had taken steps to educate himself on the effects of drinking alcohol, and had been attending Alcoholics Anonymous, Narcotics Anonymous, and counseling. According to the affidavit, Mead had been sober for 6, almost 7, months. He did not deny the occurrence of events recounted by Kilani or M.R. but stated that he had "not hurt or harmed [Kilani] or [their] son[,] but only [had] love and respect for [them]," and he described himself as "the victim" in "the case between [Kilani] and [himself]."

In May 2025, the district court issued a renewal of the domestic abuse protection order against Mead in favor of River. Mead now appeals.

## ASSIGNMENTS OF ERROR

Mead fails to properly assign any error by the district court. Our rules of appellate practice require that the appellant's initial brief include a section containing a "separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2024); see *Noland v. Yost*, 315 Neb. 568, 998 N.W.2d 57 (2023). Where a brief of a party fails to comply with the mandate of § 2-109(D)(1)(e), an appellate court may proceed as though the party failed to file a brief or, alternatively may examine the proceedings for plain error. *Swicord v. Police Stds. Adv. Council*, 309 Neb. 43, 958 N.W.2d 388 (2021). We proceed with a plain error review.

## STANDARD OF REVIEW

Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to

- 3 -

leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *J.R.M.B. v. Alegent Creighton Health*, 319 Neb. 287, 21 N.W.3d 678 (2025).

## ANALYSIS

Effective September 2025, the Legislature enacted the Protection Orders Act, and many of the statutes that were relevant and operative at the time of these proceedings have been transferred from the Protection from Domestic Abuse Act to this new statutory section. Compare Neb. Rev. Stat. § 26-101 to 26-125 (Supp. 2025) and Neb. Rev. Stat. § 42-901 to 42-930 (Reissue 2016 & Supp. 2025). Because the Protection Orders Act was not yet in effect at the time the renewal was ordered, we rely upon the statutory scheme in effect at the time.

Under Neb. Rev. Stat. § 42-924 (Cum. Supp. 2024), any victim of domestic abuse may seek a domestic abuse protection order. Pursuant to § 42-924(3)(b), a victim of domestic abuse may file a petition and affidavit to renew a protection order. The protection order may be renewed on the basis of the petitioner's affidavit stating that there has been no material change in relevant circumstances since the entry of the order and stating the reason for the requested renewal, if (a) the petitioner seeks no modification of the order, and (b) the respondent has been properly served and fails to appear at the hearing, or indicates that he or she does not contest the renewal. *Id*.

When an evidentiary hearing is held on a petition for a renewal of a protection order, the purpose of that hearing is to receive evidence so that the court may reweigh the burdens the order will inflict against its benefits in light of all the relevant circumstances, including what has or has not changed since its issuance. See *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022). A protection order, upon renewal, just as at its inception, is oriented toward the future with the goal to protect victims of domestic abuse from further harm. *Id*.

At a hearing on a petition for renewal, the court must reevaluate the likelihood of harm over the course of another year in which it would be in effect if the petition for renewal is granted. See *Allen v. Allen*, 31 Neb. App. 728, 988 N.W.2d 223 (2023). In determining if a contested renewal of the protection order is justified in light of the likelihood of future harm, the court considers all the surrounding circumstances, including the passage of time since the abuse that was found in relation to the original order and all the factors relating to its severity, nature, frequency, and impact. *Id*. The court may consider, in determining whether to renew a protection order, whether any new domestic abuse has occurred during the period of the original protection order and its severity, nature, frequency, and impact. *Id*.

Here, Kilani sought to continue the protection order without modification and Mead objected to the renewal. At a contested hearing, Kilani presented evidence that led to the initial protection order being granted and explained that she sought its renewal based upon Mead's long history of domestic abuse. She explained that despite the domestic abuse protection order precluding Mead from contacting her, he attempted to do so in January 2025 while incarcerated. She provided an affidavit of another one of Mead's victims of domestic abuse that relayed a November 4, 2024, incident, which resulted in Mead's arrest for domestic abuse.

Given the evidence of Mead's continued violent and aggressive behaviors and attempt to contact Kilani, we find no plain error in the district court's renewal of the protection order in favor of River.

- 4 -

CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.