758 N.W.2d 630 (2008)
276 Neb. 954
Randy L. YODER and Cheryl Yoder, husband and wife, Appellants,
v.
Joel T. COTTON, M.D., Appellee.
No. S-07-1337.
Supreme Court of Nebraska.
December 19, 2008.
*633 David A. Domina and Linda S. Christensen, of Domina Law Group, P.C., L.L.O., Omaha, for appellants.
David J. Cripe, Thomas J. Shomaker, and Michael G. Monday, of Sodoro, Daly & Sodoro, Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, and McCORMACK, JJ.
HEAVICAN, C.J.

I. INTRODUCTION
Randy L. Yoder (Yoder) and Cheryl Yoder brought this claim against Joel T. Cotton, M.D., alleging battery and negligence as a result of an independent medical examination. Cotton filed a motion for summary judgment. The trial court granted the summary judgment motion and applied Nebraska law. The Yoders claim that there were genuine issues of material fact and that Iowa law should have applied. We affirm the decision of the district court granting summary judgment to Cotton.

II. BACKGROUND
Yoder is an insurance adjuster and resident of Lincoln, Nebraska. Yoder sustained an on-the-job injury while working in Iowa. As a result of that injury, Yoder filed a workers' compensation claim in Iowa. As part of that claim, Yoder was required to undergo an independent medical examination (IME) by a physician of the employer's choice. The physician chosen was Cotton, a neurologist practicing in Omaha, Nebraska.
The undisputed facts indicate that Yoder presented himself at Cotton's office for the IME on March 21, 2005. At that time, Yoder informed Cotton that he had surgery on his right shoulder less than a month before and that Cotton should exercise care during his examination of Yoder. Yoder also informed Cotton that he had surgeries on the same shoulder in 1999, 2001, and June 2003. Yoder claims that Cotton disregarded the warning and manipulated *634 Yoder's right shoulder in such a way as to cause further, permanent injury. Cotton acknowledges that Yoder told him about the recent injury, but Cotton insists he did not manipulate the shoulder in any way that would cause the injury of which Yoder complains.
The Yoders filed a claim against Cotton for battery and negligence. The Yoders argued that because there was no physician-patient relationship, their claim cannot be defined as a malpractice action and therefore is not governed by the Nebraska Hospital-Medical Liability Act or any other statutory limitations on recoverable damages. The Yoders also argued that Iowa law should govern, because the circumstances requiring Yoder to undergo the IME arose under the Iowa workers' compensation law. Cotton contended that Nebraska law should apply and filed a motion for summary judgment.
The district court determined that Nebraska law applied and allowed discovery to proceed. After discovery was complete, Cotton once again filed a motion for summary judgment. The district court granted summary judgment on the negligence claim because the Yoders were unable to produce expert testimony on the issue of medical negligence or causation. The district court also granted summary judgment on the claim of battery, finding that Yoder had consented to the IME and therefore could not maintain a claim. The Yoders appealed. We moved this case to our docket pursuant to our authority to regulate the dockets of this court and of the Nebraska Court of Appeals.[1]

III. ASSIGNMENTS OF ERROR
The Yoders claim that the district court erred when it (1) applied Nebraska law rather than Iowa law, (2) granted summary judgment on their claim for battery, and (3) granted summary judgment on their claim for negligence.

IV. STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[2]
[1, 2] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[3] When reviewing questions of law, an appellate court resolves questions of law independently of the trial court's conclusions.[4]

V. ANALYSIS

1. CHOICE OF LAW IN PERSONAL INJURY ACTION
[3-5] The Yoders first argue that Iowa law should have applied in this case and that the district court erred when it applied Nebraska law. In a personal injury action, the question of whether to apply the law of the state where the injury occurred or the law of another state is a question of law.[5] In answering any choice-of-law *635 question, the court first asks whether there is any real conflict between the laws of the states.[6] At oral argument, the Yoders essentially admitted that there is no difference between Iowa law and Nebraska law as it pertains to battery and negligence. We note that while Iowa law would allow the Yoders to collect punitive damages unavailable in Nebraska, no other substantial differences exist.[7]
[6] Even if substantial differences did exist, however, Nebraska law would still apply. The Restatement (Second) of Conflict of Laws § 146[8] states that "[i]n an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship...."
[7] We have recently applied § 146. We noted that "`in virtually all instances where the conduct and the injury occur in the same state, that state has the dominant interest in regulating that conduct.'"[9] We went on to explain that every state has an interest in compensating its domiciliaries for their injuries.[10]
In this particular case, both the Yoders and Cotton are residents of Nebraska. The IME took place in Nebraska. The Yoders have given no reason to apply Iowa law other than arguing that Yoder was ordered to undergo the IME because of his Iowa workers' compensation claim. We therefore apply Nebraska law to the Yoders' claims.

2. SUMMARY JUDGMENT ON BATTERY CLAIM
The Yoders next argue that the district court erred when it granted Cotton summary judgment on their claim of battery. The Yoders claim that Yoder's consent was ineffective because he was required to undergo the IME in order to pursue his workers' compensation claim. Alternatively, the Yoders argue that Cotton's actions went beyond the scope of Yoder's consent.
[8] The tort of battery requires actual infliction of unconsented injury upon or unconsented contact with another.[11] The Restatement (Second) of Torts § 892[12] states that "[c]onsent is willingness in fact for conduct to occur. It may be manifested by action or inaction and need not be communicated to the actor." And, "[i]f words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact."[13]
Battery committed by a physician has been distinguished from claims of medical malpractice. Courts have generally noted that a claim for battery arises out of an action which "`depends on neither professional judgment nor the physician's surgical skill.'"[14] Battery actions in the *636 medical context have been limited to situations where the physician did not gain consent for his or her actions or greatly exceeded the scope of that consent, e.g., operating on the wrong limb.[15] In all cases, consent to a procedure defeated a battery claim.
In Nebraska, battery cases against physicians have been largely limited to claims of sexual assault.[16] However, in Jones v. Malloy,[17] we found that a patient's consent to chiropractic services defeated her battery claim against the physician, even though the physician acted outside the explicit scope of her consent. In that case, the patient had asked the chiropractor not to work on her lower back and had even refused him permission to x-ray her lower back.[18] The patient alleged that the chiropractor disregarded her explicit instructions and that by adjusting her lower back, he committed a battery on her.[19]
[9] We held that "[a]s a practical matter, health professionals cannot be required to obtain express consent before each touch or test they perform on a patient."[20] We further stated that "implied consent may be inferred from the patient's action of seeking treatment or some other act manifesting a willingness to submit to a particular course of treatment."[21] Questions of whether a physician overstepped his or her bounds of the patient's initial consent by failing to inform the patient of the risks of treatment is an issue of negligence properly addressed under a medical malpractice claim.[22]
Yoder gave implicit consent when he arrived at Cotton's office to undergo the IME. Yoder cooperated with Cotton's directions during the course of the examination and gave no indication that he was not giving his consent. In his deposition, Yoder testified that he tape recorded his visit, and a transcript of the tape was included in the record. Although much of the tape is indistinguishable, there is no indication that Yoder ever refused to give consent or that he asked Cotton to stop the examination. Yoder's argument that his consent was ineffective because he was required to attend the examination is unpersuasive.
We also find Andrew v. Begley[23] instructive. In that case, plaintiff was required to undergo a physical examination as part of her regularly scheduled review of disability benefits. Plaintiff claimed the physician punctured her skin during the sensory examination, tore her rotator cuff while testing range of motion in her arm, and caused further injury to her back and legs. Plaintiff then filed claims for negligence and battery. The battery claim was dismissed, because plaintiff could not show that she did not give consent or that she had withdrawn her consent.[24]
*637 [10] The court's analysis in Andrew addressed what constituted consent and stated that "where as in these circumstances, a physician is conducting an examination with express or implied consent, a plaintiff must prove that she withdrew her consent."[25] In a medical examination context, a court must first ask whether a party used language that unequivocally revoked his or her consent and was subject to no other reasonable interpretation. Second, a court must ask whether stopping the treatment or examination was medically feasible.[26]
The plaintiff in Andrew made no statement during the examination that could be interpreted as a request to stop, although she did protest that certain movements hurt. The court in that case stated that "[p]rotestations by a plaintiff of pain and discomfort ... are not enough to meet the first prong of the test for effective withdrawal."[27] Without proof that she did not consent, or that she had unequivocally withdrawn her consent, the plaintiff could not pursue her battery claim.
[11] As in Andrew, Yoder was required to undergo an IME and he complied with the requirement. Like the plaintiff in Andrew, Yoder stated that he felt some pain but he never asked Cotton to stop the examination. We find that Yoder implicitly consented to the IME. Whether Cotton acted beyond the scope of that consent is an issue of informed consent, a matter properly addressed in a medical malpractice claim, which we discuss below. Therefore, the district court did not err in granting summary judgment to Cotton on the battery claim.

3. SUMMARY JUDGMENT ON NEGLIGENCE CLAIM
[12] The Yoders finally argue that the district court erred in granting summary judgment on their negligence claim. Although Nebraska has not yet addressed the standard of care a physician owes someone undergoing an IME, we conclude that a physician conducting an IME is performing a professional service. Our law requires a plaintiff to present expert testimony of causation in a medical malpractice case in order to overcome summary judgment, and Yoder failed to do so.
The Yoders claim that their action sounds in ordinary negligence and that therefore, they were not required to present expert testimony as to causation. The Yoders also argue that they presented sufficient evidence to present genuine issues of material fact. We disagree for the following reasons.

(a) Standard of Care in IME
[13] The Yoders argue that this is not a medical malpractice case and that a general standard of care should apply. Because we hold that Cotton was rendering professional services, we apply the requirements to establish a medical malpractice case to a physician performing an IME. To make a prima facie case of medical malpractice, a plaintiff must show (1) the applicable standard of care, (2) that the defendant deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm.[28]
In Cotton's deposition, he stated that he felt he owed Yoder a professional duty in regard to the IME. When asked about that duty, Cotton replied, "I owe him the duty *638 to be truthful, to do a comprehensive evaluation to the degree that I'm able to make a diagnosis, and had I felt that he had suffered any additional injury, I would have taken it upon myself to have that addressed immediately." The record contains a copy of an opinion by the American Medical Association's Counsel on Judicial and Ethical Affairs entitled "Patient-Physician Relationship in the Context of Work-Related and Independent Medical Examinations." The opinion states that "a limited patient-physician relationship should be considered to exist during isolated assessments of an individual's health or disability for an employer, business, or insurer."[29]
The Yoders cite several cases from other jurisdictions addressing the duty owed by a physician performing an IME and for the proposition that expert testimony is not required to establish the standard of care.[30] However, only one of those cases supports the Yoders' position that an injury sustained during an IME sounds in ordinary negligence rather than medical malpractice.[31]
In fact, in Dyer v. Trachtman,[32] a case the Yoders cite as supporting their contention that expert testimony is not required to establish breach of the standard of care, the Michigan Supreme Court specifically found that a limited physician-patient relationship exists for the purposes of an IME. The court pointed out that statutes governing medical malpractice were designed to protect physicians and that to allow physicians performing IME's to be held to ordinary negligence standards would result in those physicians being unwilling to perform IME's or serve as experts.[33] The Michigan Supreme Court found that a majority of courts recognized that an IME did not create an ordinary physician-patient relationship, but that there was a limited duty that reflects the standards set out by the American Medical Association.[34]
While the Yoders are correct in stating that Cotton had a duty not to harm, the relationship between a physician performing an IME and an examinee is that of a limited physician-patient relationship. We need not address whether the Yoders were required to present expert testimony regarding Cotton's alleged breach of the standard of care, because the Yoders failed to present expert testimony on proximate cause.

(b) Proof of Proximate Cause
[14] The record clearly demonstrates that the Yoders did not provide sufficient evidence of proximate cause to survive summary judgment. Our law is clear that a self-supporting affidavit from a defendant physician suffices to make a prima facie case that the defendant did not commit malpractice.[35] Cotton affirmatively alleged that he did not breach the standard of care of a physician, that nothing he did harmed Yoder, and that his actions were not the proximate cause of Yoder's injury.
[15] In a medical malpractice case, expert testimony is almost always required *639 to prove causation.[36] Although an exception exists for matters where a layperson can infer negligence when causation is plain, such is not the case here. The Yoders allege that Cotton's actions tore the labrum in Yoder's right shoulder. Yoder had previously injured his shoulder and had undergone multiple surgeries when Cotton examined him, and it is not at all clear that Cotton's actions caused Yoder's current problems. Furthermore, there is insufficient evidence in the record that Cotton's examination could have caused Yoder's injury, as was noted by the only expert the Yoders deposed.
Dr. Daniel P. Slawski, the expert deposed, stated that he would not provide expert testimony at trial. When asked his opinion on what caused the tear in Yoder's labrum, Slawski stated that "[i]t would be extremely difficult to determine exactly the cause. Especially when we see patients after surgery or two surgeries and episodes, we have to go strictly by the patient's history." Slawski stated that he could not determine from his examination whether Yoder's injury was caused by a one-time trauma or repetitive movements over a long period of time. Slawski went on to say that he could not determine whether the labrum was torn prior to the IME, because that part of the joint was never visualized before surgery, nor was it operated on during the surgery.
[16] In essence, the only evidence that the Yoders offered regarding causation was Yoder's own statement that his shoulder did not hurt prior to the examination and that it did hurt following the examination. The Yoders' only other evidence regarding causation was Slawski's equivocal statement that he could not rule out the possibility that Cotton had caused the injury. Such was insufficient to rebut Cotton's affidavit stating that his actions were not the cause of Yoder's injury. For that reason, we find that the district court did not err when it granted summary judgment on the Yoders' negligence claim, because there was no genuine issue of material fact.

VI. CONCLUSION
In a personal tort case, we apply the law of the state where the injury took place, and so we find that the district court was correct in applying Nebraska law. We also find that the district court did not err in granting summary judgment in favor of Cotton on the battery and negligence claims. Yoder implicitly consented to the IME, and whether Cotton acted beyond the scope of that consent is an issue of informed consent, a matter properly addressed in a medical malpractice claim. In regard to medical malpractice, the Yoders failed to present expert testimony on the issue of causation, which testimony was required to overcome summary judgment. We therefore affirm the decision of the district court.
AFFIRMED.
GERRARD and MILLER-LERMAN, JJ., not participating.
NOTES
[1] See Neb.Rev.Stat. § 24-1106 (Reissue 1995).
[2] Hughes v. Omaha Pub. Power Dist., 274 Neb. 13, 735 N.W.2d 793 (2007).
[3] Id.
[4] See Eggers v. Rittscher, 247 Neb. 648, 529 N.W.2d 741 (1995).
[5] Malena v. Marriott International, 264 Neb. 759, 651 N.W.2d 850 (2002).
[6] See Johnson v. United States Fidelity & Guar. Co., 269 Neb. 731, 696 N.W.2d 431 (2005).
[7] See, e.g., Yates v. Iowa West Racing Ass'n, 721 N.W.2d 762 (Iowa 2006); Bradshaw v. Iowa Methodist Hospital, 251 Iowa 375, 101 N.W.2d 167 (1960).
[8] Restatement (Second) of Conflict of Laws § 146 at 430 (1971). Accord Malena, supra note 5.
[9] Malena, supra note 5, 264 Neb. at 769, 651 N.W.2d at 858.
[10] Id.
[11] Reavis v. Slominski, 250 Neb. 711, 551 N.W.2d 528 (1996).
[12] Restatement (Second) of Torts § 892 at 362 (1979). Accord Reavis, supra note 11.
[13] Id.
[14] Andrew v. Begley, 203 S.W.3d 165, 171 (Ky.App.2006).
[15] See, e.g., Unruh-Haxton v. Regents of Univ. of Cal., 162 Cal.App.4th 343, 76 Cal.Rptr.3d 146 (2008); Saxena v. Goffney, 159 Cal. App.4th 316, 71 Cal.Rptr.3d 469 (2008); Andrew, supra note 14; Linog v. Yampolsky, 376 S.C. 182, 656 S.E.2d 355 (2008); Godbee v. Dimick, 213 S.W.3d 865 (Tenn.App.2006); Haynes v. Beceiro, 219 S.W.3d 24 (Tex.App. 2006).
[16] See, Kant v. Altayar, 270 Neb. 501, 704 N.W.2d 537 (2005); Reavis, supra note 11.
[17] Jones v. Malloy, 226 Neb. 559, 412 N.W.2d 837 (1987).
[18] Id.
[19] Id.
[20] Id. at 564, 412 N.W.2d at 841.
[21] Id.
[22] Id.
[23] Andrew, supra note 14.
[24] Id.
[25] Id. at 172.
[26] Id.
[27] Id.
[28] Thone v. Regional West Med. Ctr., 275 Neb. 238, 745 N.W.2d 898 (2008).
[29] See, e.g., Andrew, supra note 14.
[30] Smith v. Welch, 265 Kan. 868, 967 P.2d 727 (1998); Dyer v. Trachtman, 470 Mich. 45, 679 N.W.2d 311 (2004); Webb v. T.D., 287 Mont. 68, 951 P.2d 1008 (1997); Ramirez v. Carreras, 10 S.W.3d 757 (Tex.App.2000).
[31] Ramirez, supra note 30.
[32] Dyer, supra note 30.
[33] Id.
[34] Id.
[35] Thone, supra note 28.
[36] Id.