Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:09 PM CDT

RaySean Barber, appellant, v.
State of Nebraska, appellee.

___ N.W.3d ___

Filed April 19, 2024.    No. S-23-627.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Tort Claims Act: Appeal and Error.** Whether the allegations made by a plaintiff constitute a cause of action under the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014 & Cum. Supp. 2022), or whether the allegations set forth claims which are precluded by the exemptions set forth in the act is a question of law, for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.

3. **Tort Claims Act: Legislature: Immunity: Waiver.** Through the enactment of the State Tort Claims Act, the Legislature has waived sovereign immunity with respect to some, but not all, types of tort claims.

4. **Tort Claims Act: Immunity: Waiver.** The State Tort Claims Act contains exemptions to the limited waiver of sovereign immunity, and those exemptions describe the types of tort claims for which the State retains sovereign immunity.

5. **Tort Claims Act: Immunity: Waiver: Jurisdiction: Dismissal and Nonsuit.** When a claim falls within an exemption under the State Tort Claims Act, sovereign immunity for the claim has not been waived and the proper remedy is to dismiss the claim for lack of subject matter jurisdiction.

6. **Statutes: Waiver: Immunity.** In order to strictly construe statutes against a waiver of sovereign immunity, courts must read statutory exemptions from a waiver of sovereign immunity broadly.

7. **Tort Claims Act: Battery: Liability.** When deciding whether conduct falls within the statutory exemption for any claim arising out of battery

under the State Tort Claims Act, it is only necessary to determine whether the conduct arises out of a battery, and courts need not determine whether the actor ultimately could be held liable for any damage resulting from the battery, based on the presence or absence of affirmative defenses.

8. **Battery: Malpractice: Physician and Patient.** Although some medical malpractice claims involve batteries, not all do.

9. **Torts: Battery: Words and Phrases.** Battery is defined as the actual infliction of unconsented injury upon or unconsented contact with another.

10. **Torts: Battery: Malpractice: Physician and Patient.** Nebraska courts distinguish batteries committed by a physician from claims of medical malpractice. Battery actions in the medical context are limited to situations where the physician did not gain consent for his or her actions or greatly exceeded the scope of that consent, e.g., operating on the wrong limb.

11. **Torts: Battery.** Consent to a medical procedure defeats a battery claim.

12. **Torts: Words and Phrases.** Consent is willingness in fact for conduct to occur. It may be manifested by action or inaction and need not be communicated to the actor.

13. **Torts: Battery.** Consent for medical treatment need not be express in order to defeat a battery claim, and implied consent may be inferred from the patient's action of seeking treatment or some other act manifesting a willingness to submit to a particular course of treatment.

14. **Torts: Battery: Malpractice: Physician and Patient.** Generally, when plaintiffs assert that a physician provided medical treatment without their express or implied consent, they present a claim of battery. And when plaintiffs assert that a physician acted beyond the scope of any express or implied consent when providing medical treatment, they present an issue of informed consent properly addressed as a medical malpractice claim.

15. **Tort Claims Act: Immunity: Complaints.** To determine whether a claim falls within the exemption for claims arising out of assault or battery, Nebraska courts apply the "gravamen" of the complaint test.

16. **Complaints: Words and Phrases.** The "gravamen" of a complaint is the substantial point or essence of a claim, grievance, or complaint, and it is found by examining and construing the substance of the allegations of the complaint as a whole without regard to the form or label adopted by the pleader or the relief demanded.

17. **Tort Claims Act: Assault: Battery.** A claim arises out of an assault or battery for purposes of Neb. Rev. Stat. § 81-8,219(4) (Cum. Supp. 2022)

if the claim stems from, arises out of, is inextricably linked to, is essential to, or would not exist without the assault or battery.

18. ____: ____: ____. When a tort claim against the government seeks to recover damages for personal injury stemming from an assault or battery, the claim necessarily arises out of assault or battery and is barred by the intentional tort exemption under the State Tort Claims Act.

Appeal from the District Court for Douglas County: Tressa M. Alioth, Judge. Affirmed.

RaySean Barber, pro se.

Michael T. Hilgers, Attorney General, Eric J. Hamilton, and Zachary B. Pohlman for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Papik, JJ., and Harder, District Judge.

Stacy, J.

RaySean Barber appeals from an order dismissing his negligence action against the State of Nebraska. He sued the State under the State Tort Claims Act (STCA),[1] alleging that medical staff with the Nebraska Department of Correctional Services (DCS) negligently determined he was mentally ill and dangerous and obtained an involuntary medication order (IMO) authorizing monthly injections of the antipsychotic medication Haldol against his will. The State moved to dismiss Barber's complaint for lack of subject matter jurisdiction pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1), arguing the claim was barred by the STCA's exemption for "[a]ny claim arising out of . . . battery."[2] The district court agreed and dismissed the complaint, reasoning that "[n]o semantic recasting of the events can alter the fact that the unconsented and involuntary injection . . . is the cause of Barber's alleged

_____

[1] See Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2014 & Cum. Supp. 2022).

[2] § 81-8,219(4).

injury—a battery." We agree that Barber's claim falls within the exemption and affirm.

## BACKGROUND

The factual record in this appeal is limited to the allegations of Barber's complaint, which, at this stage of the proceedings, we accept as true.[3] Those allegations, and the reasonable inferences therefrom, indicate that while Barber was an inmate in the custody of DCS, he was diagnosed with "schizoaffective disorder, bipolar type, multiple episodes, currently in acute episode." He refused treatment with antipsychotic medications, prompting DCS medical staff to apply for a series of IMOs pursuant to DCS administrative procedures. According to the complaint, those procedures required DCS staff to conduct a mental health evaluation before applying for an IMO and also required a showing that Barber was mentally ill and dangerous.

In November 2019, a hearing was held on the initial IMO application before a committee of three DCS psychiatric staff. A mental health practitioner employed by DCS was appointed to represent Barber at the hearing. The committee found that Barber met the criteria for issuance of the IMO. Barber appealed the committee's decision to the director of DCS, who upheld it. Thereafter, approximately every 6 months for the next 3 years, DCS medical staff followed a similar process to apply for and receive another IMO. As a result of the IMOs, Barber was injected with Haldol once a month for 3 years during his incarceration, against his will.

## COMPLAINT

In March 2023, Barber filed what he describes as a medical malpractice action against the State under the STCA. His complaint alleged that DCS employees were negligent in "applying for, ordering the initiation and continuation of, and

---

[3] See, *Williams v. State*, 310 Neb. 588, 967 N.W.2d 677 (2021); *Brown v. State*, 305 Neb. 111, 939 N.W.2d 354 (2020).

upholding" the IMOs and that DCS medical staff "failed to adhere to medical standards" when determining he was mentally ill and dangerous.

Barber alleges that as a "proximate result of the IMO," he suffered physical, mental, and emotional damages. The complaint also alleges the IMOs prevented him from participating in work release programs and required him to take other "potentially dangerous" medications to control "the side effects of the Haldol that he was injected with." Barber seeks monetary damages of $2.5 billion and "treble damages for the gross conduct of the officials."

## Motion to Dismiss and District Court Order

The State moved to dismiss Barber's complaint pursuant to § 6-1112(b)(1), asserting the claim was barred by sovereign immunity because it fell within the exemption in § 81-8,219(4) for "[a]ny claim arising out of . . . battery." After a hearing, the district court agreed and entered an order granting the State's motion and dismissing Barber's complaint with prejudice.

The court's order recited the rule that exemptions to the STCA must be read broadly to preserve the State's limited waiver of immunity[4] and observed that in the context of tort claims, battery is defined as "an actual infliction of an unconsented injury upon or unconsented contact with another."[5] The court also noted that in the medical context, a physician's failure to obtain the patient's consent for treatment is considered a battery.[6] The court concluded that the involuntary administration of medication pursuant to an IMO is, "by its nature[,] . . . treatment without consent" and thus described the "essence" of Barber's claim to be a battery, reasoning that

---

[4] See, e.g., *Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020).

[5] *Britton v. City of Crawford*, 282 Neb. 374, 382, 803 N.W.2d 508, 515 (2011) (internal quotation marks omitted).

[6] See, e.g., *Yoder v. Cotton*, 276 Neb. 954, 758 N.W.2d 630 (2008).

DCS physicians' diagnoses led to an [IMO] which pre-
vented Barber from exercising his right to direct his
medical treatment. [DCS] healthcare providers then
made physical contact with Barber by executing the IMO
against his wishes and consent by injecting him with
Haldol. Because his claim arises out of this physical con-
tact, his claim can only be characterized as a battery.

And the court explained that its analysis would be the same
whether Barber's claim was construed as an ordinary battery
or a "medical battery," reasoning that either way, the claim
would fall within the exemption for claims arising out of a
battery. The court dismissed Barber's complaint, concluding
that "[n]o semantic recasting of the events can alter the fact
that the unconsented and involuntary injection . . . is the cause
of Barber's alleged injury—a battery."

Barber filed this timely appeal, which we moved to our
docket on our own motion.

## ASSIGNMENT OF ERROR

Barber assigns, restated, that the district court erred in con-
cluding the allegations of his complaint fall within the STCA's
exemption for claims arising out of a battery.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss on the
pleadings is reviewed de novo, accepting the allegations in
the complaint as true and drawing all reasonable inferences in
favor of the nonmoving party.[7] Whether the allegations made
by a plaintiff constitute a cause of action under the STCA or
whether the allegations set forth claims which are precluded
by the exemptions set forth in the act is a question of law, for
which an appellate court has a duty to reach its conclusions
independent of the conclusions reached by the district court.[8]

---

[7] *Williams, supra* note 3.

[8] *Id.*

ANALYSIS

Before considering Barber's assignment of error, we briefly review the legal authority permitting states to administer antipsychotic medication to inmates against their will. In *Washington v. Harper*,[9] the U.S. Supreme Court recognized that an inmate in state custody "possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." But *Harper* also recognized that states have a legitimate interest in providing inmates with medical treatment and in decreasing the danger posed by inmates with an untreated mental illness. As such, *Harper* held that "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."[10]

Under *Harper*, the decision to medicate can be "made by medical professionals rather than a judge,"[11] so long as the medical professionals were not also involved in the inmate's treatment or diagnosis.[12] *Harper* also addressed the minimal procedural safeguards to which an inmate is entitled before the State may administer antipsychotic drugs against the inmate's will, including (1) notice, (2) the right to be present at an adversary hearing, (3) the right to present and cross-examine witnesses, and (4) the opportunity to seek judicial review of the decision under state law. The *Harper* Court concluded that due process does not require representation by an attorney at the adversarial hearing; it is sufficient to provide

---

[9] *Washington v. Harper*, 494 U.S. 210, 221-22, 110 S. Ct. 1028, 108 L. Ed. 2d 178 (1990).

[10] *Id.*, 494 U.S. at 227.

[11] *Id*., 494 U.S. at 231.

[12] *Harper, supra* note 9.

the inmate with "an independent lay adviser who understands the psychiatric issues involved."[13]

The DCS policy governing the IMO procedure is not in the appellate record, but Barber's brief on appeal states that "the procedures discussed in *Harper* were adhered to"[14] by DCS, and he does not challenge that procedure in this action.[15] Instead, he seeks monetary damages under the STCA for the alleged negligent acts and omissions of DCS staff in seeking, administering, and upholding the IMOs that allowed the State to inject Barber with Haldol against his will.

## STCA

[3-6] Through the enactment of the STCA, the Legislature has waived sovereign immunity with respect to some, but not all, types of tort claims.[16] The STCA contains exemptions to the limited waiver of sovereign immunity,[17] and those exemptions describe the types of tort claims for which the State retains sovereign immunity.[18] When a claim falls within an exemption under the STCA, sovereign immunity for the claim has not been waived and the proper remedy is to dismiss the claim for lack of subject matter jurisdiction.[19] And we have repeatedly recognized that in order "to strictly construe [statutes] against a waiver of sovereign immunity, [courts]

---

[13] *Id.*, 494 U.S. at 236.

[14] Brief for appellant at 12.

[15] But see *Barber v. Frakes*, No. 8:20CV282, 2022 WL 4131193 (D. Neb. Sept. 12, 2022) (dismissing Barber's 42 U.S.C. § 1983 (2018) claim alleging DCS officials violated his due process rights under IMOs).

[16] See, *Dion v. City of Omaha*, 311 Neb. 522, 973 N.W.2d 666 (2022); *Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022); *Williams, supra* note 3; *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021).

[17] See § 81-8,219.

[18] See *Edwards, supra* note 16.

[19] See, *Clark, supra* note 16; *Edwards, supra* note 16.

must read [statutory] exemptions from a waiver of sovereign immunity broadly."[20]

As relevant here, the exemption in § 81-8,219(4) effectively retains the State's sovereign immunity for "[a]ny claim arising out of assault [or] battery." Because the exemption for claims arising out of assault or battery is the same under the STCA and the Political Subdivisions Tort Claims Act (PSTCA),[21] our cases construing the STCA exemption are applicable to cases construing the PSTCA exemption and vice versa.[22]

This court has construed and applied the exemption for claims arising out of assault or battery in several cases,[23] often referring to the intentional torts of assault and battery interchangeably. Although the same principles of sovereign immunity apply whether we are discussing claims arising out of assaults or claims arising out of batteries, it is helpful to review our cases specifically discussing the exemption in the context of an intentional battery.

For instance, we considered the exemption for claims arising out of battery in *Britton v. City of Crawford.*[24] There, an armed 16-year-old burglary suspect was discovered hiding in a vacant building, and when law enforcement officers attempted to apprehend the suspect, he drew a gun and

---

[20] *Moser, supra* note 4, 307 Neb. at 29, 948 N.W.2d at 203. Accord, *Brown, supra* note 3; *Reiber v. County of Gage*, 303 Neb. 325, 928 N.W.2d 916 (2019); *Rouse v. State*, 301 Neb. 1037, 921 N.W.2d 355 (2019); *Amend v. Nebraska Pub. Serv. Comm.*, 298 Neb. 617, 905 N.W.2d 551 (2018); *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015).

[21] See Neb. Rev. Stat. § 13-910(7) (Reissue 2022).

[22] See, e.g., *Moser, supra* note 4.

[23] See, e.g., *Dion, supra* note 16; *Williams, supra* note 3; *Edwards, supra* note 16; *Moser, supra* note 4; *Rutledge v. City of Kimball*, 304 Neb. 593, 935 N.W.2d 746 (2019); *Britton, supra* note 5; *McKenna v. Julian*, 277 Neb. 522, 763 N.W.2d 384 (2009), *abrogated in part, Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010), *overruled, Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017); *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005).

[24] *Britton, supra* note 5.

pointed it at the officers. One of the officers shot and killed the suspect and was charged with second degree assault. As an affirmative defense to the charge, the officer claimed self-defense and was found not guilty. Later, the suspect's estate filed an action under the PSTCA, alleging the officers were negligent in how they handled the suspect. The district court dismissed the action, finding it was barred by the PSTCA's exemption for claims arising out of battery.[25]

On appeal in *Britton*, we focused first on the definition of battery, explaining:

> In Nebraska, the intentional tort of battery is defined as "'an actual infliction' of an unconsented injury upon or unconsented contact with another." We have also recognized the definition of battery as "any intentional, unlawful physical violence or contact inflicted on a human being without his consent."[26]

We stated that "contact is unlawful if it is unconsented to"[27] and that "harmful contact intentionally done is the essence of battery."[28] Applying this definition, we concluded that because the officer's conduct in shooting the suspect amounted to a battery, the claim fell within the PSTCA's exemption for claims arising out of battery.

In urging a contrary result, the suspect's estate in *Britton* argued that because the officer successfully defended against the criminal charges by pleading self-defense, the unconsented contact was not unlawful and thus there was no battery for purposes of the PSTCA exemption. We rejected that argument, explaining:

> In discussing the intentional torts exception to the PSTCA, we have not analyzed whether an affirmative defense would remove an intentional tort from coverage

---

[25] See § 13-910(7).

[26] *Britton, supra* note 5, 282 Neb. at 381-82, 803 N.W.2d at 515.

[27] *Id*. at 382, 803 N.W.2d at 515.

[28] *Id*.

under the exception. We conclude that such an analysis is not appropriate [when determining] whether certain claims fall under the exception found in § 13-910(7). The plain language of the exception excludes an enumerated list of intentional torts. On its face, it does not contemplate whether such intentional acts are legally justified. Nor does the exception state that the waiver of sovereign immunity only applies to claims based on intentional torts for which the actor could be held liable.[29]

[7] *Britton* held that when deciding whether conduct falls within the battery exemption in § 13-910(7), "it is only necessary to determine whether the conduct 'aris[es] out of' a battery,"[30] and courts "need not determine whether the actor ultimately could be held liable for any damage resulting from the battery, based on the presence or absence of affirmative defenses."[31]

More recently, we considered the battery exemption in *Dion v. City of Omaha*.[32] There, a film crew was following police on a robbery call, and when police shot at a fleeing suspect, a member of the film crew was shot and killed. The deceased's estate brought an action under the PSTCA, claiming the officers were negligent in several respects. On appeal, we addressed whether the estate's claim was barred by the exemption for claims arising out of battery.

The estate argued that no battery occurred because the officers' acts in shooting at the fleeing suspect were "privileged."[33] We acknowledged that "a privilege to make the contact is a defense to battery,"[34] and we explained that although it is

---

[29] *Id*. at 382-83, 803 N.W.2d at 515.

[30] *Id*. at 383, 803 N.W.2d at 516.

[31] *Id*.

[32] *Dion, supra* note 16.

[33] *Id*. at 548, 973 N.W.2d at 686.

[34] *Id*. at 550, 973 N.W.2d at 687. See, also, Restatement (Second) of Torts § 118 (1965).

sometimes described as a "'privilege to commit battery,'" it is more precise to say it is a "privilege to commit what would otherwise be a battery."[35] That is so, we explained, because a "privileged act is generally defined as one that would ordinarily be tortious, but which, under the circumstances, does not subject the actor to liability."[36] Then, as we had done earlier in *Britton*, we rejected the suggestion that a valid defense to a claim of battery necessarily causes the battery to fall outside the PSTCA exemption under § 13-910(7).

*Britton* and *Dion* illustrate that when determining whether a claim falls within the statutory exemption for claims arising out of battery, it is irrelevant whether the actor has a viable affirmative defense or justification for committing the battery. To the extent Barber argues that the exemption in § 81-8,219(4) cannot apply here because the IMO gave DCS staff a privilege to commit what would otherwise be a battery, we reject that argument as meritless.

But we understand Barber's primary argument on appeal to be that his claim of "unconsented to medical treatment"[37] is solely a claim for medical malpractice, and consequently, he presents no claim that can be characterized as a battery. To address this contention, we first review the legal distinction between claims asserting medical battery and claims asserting medical negligence under Nebraska law. Once we determine the nature of the claim Barber has alleged, we consider whether it falls within the exemption for claims arising out of battery.

## Medical Malpractice Versus Medical Battery

[8] We have recognized that although some medical malpractice claims involve batteries, not all do.[38] We explained

---

[35] *Id*.

[36] *Id*.

[37] Reply brief for appellant at 4.

[38] See *Yoder, supra* note 6.

the relevant distinction in *Yoder v. Cotton.*[39] In that case, the plaintiff was ordered by the Workers' Compensation Court to submit to an independent medical examination (IME). After the IME, the plaintiff sued the IME physician, alleging claims of battery and negligence. The battery claim was based on allegations that the plaintiff had not consented to be touched by the physician, but, rather, had been ordered by the court to submit to the IME. And the negligence claim alleged the physician disregarded the plaintiff's warnings to be careful when examining his right shoulder and instead manipulated the shoulder in a way that caused permanent injury.

The district court granted summary judgment on both claims, reasoning the battery claim failed because the plaintiff had impliedly consented to the IME and the negligence claim failed because the plaintiff had not produced expert testimony on the issues of standard of care or causation. We affirmed on appeal, and in doing so, we addressed which of the plaintiff's claims were properly characterized as battery and which were properly characterized as medical negligence.

[9-11] *Yoder* defined battery as the "actual infliction of unconsented injury upon or unconsented contact with another"[40] and explained:

> Battery committed by a physician has been distin-guished from claims of medical malpractice. . . . *Battery actions in the medical context have been limited to situations where the physician did not gain consent for his or her actions or greatly exceeded the scope of that consent, e.g., operating on the wrong limb.* In all cases, consent to a procedure defeated a battery claim.[41]

---

[39] *Id.*

[40] *Id.* at 958, 758 N.W.2d at 635. Accord *Britton, supra* note 5, 282 Neb. at 382, 803 N.W.2d at 515 (defining battery as "actual infliction of an unconsented injury upon or unconsented contact with another" (internal quotation marks omitted)).

[41] *Yoder, supra* note 6, 276 Neb. at 958-59, 758 N.W.2d at 635-36 (emphasis supplied).

[12,13] *Yoder* relied on the Restatement (Second) of Torts to define consent, stating that "'[c]onsent is willingness in fact for conduct to occur. It may be manifested by action or inaction and need not be communicated to the actor.'"[42] *Yoder* also observed that consent for medical treatment need not be express in order to defeat a battery claim, reasoning that "'[a]s a practical matter, health professionals cannot be required to obtain express consent before each touch or test they perform on a patient.'"[43] *Yoder* stated that "'implied consent may be inferred from the patient's action of seeking treatment or some other act manifesting a willingness to submit to a particular course of treatment'"[44] and that "'[i]f words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact.'"[45]

Finally, *Yoder* distinguished claims asserting a lack of exress or implied consent to medical treatment from claims asserting a lack of informed consent. *Yoder* explained that when the question is "whether a physician overstepped [the] bounds of the patient's initial consent by failing to inform the patient of the risks of treatment,"[46] it presents "an issue of negligence properly addressed under a medical malpractice claim"[47] based on lack of informed consent, rather than a battery.

[14] As such, under the framework discussed in *Yoder*, when plaintiffs assert that a physician provided medical treatment without their express or implied consent, they

[42] *Id*. at 958, 758 N.W.2d at 635 (quoting Restatement (Second) of Torts § 892 (1979)).

[43] *Id.* at 959, 758 N.W.2d at 636 (quoting *Jones v. Malloy*, 226 Neb. 559, 412 N.W.2d 837 (1987)).

[44] *Id.*

[45] *Id*. at 958, 758 N.W.2d at 635 (quoting Restatement (Second) of Torts, *supra* note 42).

[46] *Yoder, supra* note 6, 276 Neb. at 959-60, 758 N.W.2d at 636.

[47] *Id*. at 960, 758 N.W.2d at 636.

present a claim of battery. And when plaintiffs assert that a physician acted beyond the scope of any express or implied consent when providing medical treatment, they present an issue of informed consent properly addressed as a medical malpractice claim.

Applying the *Yoder* framework here, we cannot agree with Barber that his complaint presents only a claim of medical malpractice and therefore cannot arise out of a battery. This is so because Barber has not alleged or argued that DCS medical staff went beyond the scope of his express or implied consent when obtaining and administering the IMOs. Instead, Barber concedes that he did not consent to the injection of antipsychotic medication and that the injections were administered against his will.[48] Under Nebraska law, providing medical treatment without express or implied consent constitutes a battery, not medical malpractice.[49]

Other courts have rejected arguments similar to that presented by Barber. In *Lockhart v. Bd. of Regents of the Univ. Sys. of Ga.*,[50] the plaintiff gave consent for dental treatment of her upper teeth, but the dentist ground down several lower teeth instead. The Georgia Tort Claims Act excludes "losses resulting from . . . battery,"[51] and the plaintiff in *Lockhart* argued this exclusion did not apply because the losses resulted from medical malpractice, not from battery. The appellate court disagreed, reasoning that under Georgia law, a "medical touching without consent is like any other touching without consent: it constitutes the intentional tort of battery for which an action will lie."[52] As such, the appellate court concluded

---

[48] See, e.g., reply brief for appellant at 5 (characterizing claim as one for "unconsented to treatment by a physician").

[49] See *Yoder,* supra note 6.

[50] *Lockhart v. Bd. of Regents of the Univ. Sys. of Ga.*, 316 Ga. App. 759, 730 S.E.2d 475 (2012).

[51] Ga. Code Ann. § 50-21-24 (2009).

[52] *Lockhart, supra* note 50, 316 Ga. App. at 762-63, 730 S.E.2d at 478 (internal quotation marks omitted).

the unconsented grinding down of the plaintiff's bottom teeth amounted to a medical battery and thus fell within the exemption and was barred by sovereign immunity.

Similarly, in *Moos v. United States*,[53] a veteran consented to a government surgeon performing surgery on his left leg and hip, but the surgeon operated on his right leg and hip. The veteran filed a medical malpractice suit under the Federal Tort Claims Act, which contained an exception for "[a]ny claim arising out of assault [or] battery."[54] The government successfully moved to dismiss the action for lack of jurisdiction, arguing the claim fell within the exception. On appeal, the Eighth Circuit Court of Appeals affirmed, reasoning that under Minnesota tort law:

> "[A] surgeon who performs an operation without the consent of the patient is liable for assault and battery regardless of lack of intent or negligence on his part. Such result is not peculiar to this jurisdiction but is the general rule. . . ." This, we think, is an accurate statement of the law.
>
>   . . . [T]he plaintiff's claim against the Government is, under applicable law, one arising out of an assault and battery, of which the court had no jurisdiction under the Tort Claims Act.[55]

Based on the foregoing, we conclude that because Barber's claim alleges medical treatment without consent, it presents a claim of battery under Nebraska law, and we reject his argument that he has asserted only a medical malpractice claim. Having determined that the nature of Barber's claim is a battery, we turn now to whether his claim falls within the STCA's exemption for "[a]ny claim arising out of . . . battery."[56]

---

[53] *Moos v. United States*, 225 F.2d 705 (8th Cir. 1955).

[54] See 28 U.S.C. § 2680(h) (2018).

[55] *Moos, supra* note 53, 225 F.2d at 706.

[56] § 81-8,219(4).

Barber's Claim Arose
Out of Battery

[15,16] To determine whether a claim falls within the exemption for claims arising out of assault or battery, Nebraska courts apply the "gravamen of the complaint test."[57] The "gravamen" of a complaint is the "substantial point or essence of a claim, grievance, or complaint," and it is found by examining and construing the substance of the allegations of the complaint as a whole without regard to the form or label adopted by the pleader or the relief demanded.[58]

Here, accepting the allegations of Barber's complaint as true and drawing all reasonable inferences in his favor, the gravamen of his complaint is that the acts or omissions of DCS staff in administering Haldol injections against his will resulted in his personal injury. Because we have already concluded that the nonconsensual medical treatment at issue here constitutes a battery under Nebraska law, the only issue remaining for our consideration is whether Barber's claim arises out of a battery.

[17,18] A claim arises out of an assault or battery for purposes of § 81-8,219(4) if the claim stems from, arises out of, is inextricably linked to, is essential to, or would not exist without the assault or battery.[59] In other words, when a tort claim against the government seeks to recover damages for personal injury stemming from an assault or battery, the claim necessarily arises out of assault or battery and is barred by the intentional tort exemption under the STCA.[60]

The batteries at issue here were allegedly committed by DCS employees, and we have consistently held that claims arising out of assaults and batteries committed by governmental

---

[57] *Dion, supra* note 16, 311 Neb. at 541, 973 N.W.2d at 681-82 (internal quotation marks omitted).

[58] *Id*.

[59] See *Dion, supra* note 16.

[60] See *Edwards, supra* note 16.

employees fall within the exemption, no matter how the claims are framed.[61] As we explained in *Britton*:

> While other factors may have contributed to the situation which resulted in [the suspect's] death, but for the battery, there would have been no claim. No semantic recasting of events can alter the fact that the shooting was the immediate cause of [the suspect's] death and, consequently, the basis of [the plaintiff's] claim. Even if it is possible that negligence was a contributing factor to [the suspect's] death, the alleged negligence was inextricably linked to a battery.[62]

Barber's claim—that DCS staff negligently subjected him to an IMO and injected him with Haldol against his will—is a claim that "arises out of" a battery. But for the involuntary administration of medication, he would have no claim, and no semantic recasting of events can alter the fact that the injection of antipsychotic medication without Barber's consent is the basis for his tort claim. Because Barber's claim arose out of a battery, it is barred by the exemption in § 81-8,219(4). His arguments to the contrary have no merit.

## CONCLUSION

For the foregoing reasons, the district court's dismissal of Barber's complaint for lack of subject matter jurisdiction was correct, and it is affirmed.

Affirmed.

Funke, J., participating on briefs.
Freudenberg, J., not participating.

---

[61] See, e.g., *Britton, supra* note 5; *McKenna, supra* note 23; *Johnson, supra* note 23.

[62] *Britton, supra* note 5, 282 Neb. at 386, 803 N.W.2d at 518.

Miller-Lerman, J., concurring.

As I read the complaint, Barber did not plead a medical malpractice action based on a failure to diagnose. Barber did plead a medical battery, i.e., a battery, by a state employee.

As such, I think the State is immune under Neb. Rev. Stat. § 81-8,219(4) (Cum. Supp. 2022) and that such immunity is settled in the pre-*Moser v. State*, 307 Neb. 18, 948 N.W.2d 194 (2020), jurisprudence, e.g., *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011). To the extent the *Moser* framework, to which I have repeatedly dissented, is incorporated in the majority opinion's analysis, I respectfully believe it is not necessary. Based on application of the pre-*Moser* jurisprudence, I concur in the result.