IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

NIENHUSER V. MACMILLAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SCOTT NIENHUSER, APPELLANT,

V.

JEFFREY MACMILLAN, M.D., APPELLEE.

Filed June 10, 2025.    No. A-24-688.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed.

James R. Korth, of Reynolds, Korth & Samuelson, P.C., L.L.O. for appellant.

Travis W. Tettenborn of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., and Brian C. Wright, of Wright Law Office, for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

PIRTLE, Judge.

## INTRODUCTION

Scott Nienhuser filed an action against Dr. Jeffrey MacMillan, alleging battery and lack of informed consent, following his knee replacement surgery performed by MacMillan. Nienhuser alleges that he did not consent to the knee device used in his surgery. The district court for Scotts Bluff County granted MacMillan's motion for summary judgment and Nienhuser appeals. However, Nienhuser has not presented any assignments of error as required by Neb. Ct. R. App. P. § 2-109(D)(1)(e). Consequently, we review only for plain error and, finding none, we affirm.

## BACKGROUND

After Nienhuser had left knee replacement surgery, he filed a medical malpractice action against MacMillan, his surgeon. In addition to a negligence claim, Nienhuser alleged that

- 1 -

MacMillan committed a battery by implanting a device during the knee surgery that he did not consent to being used. He also alleged MacMillan had not obtained informed consent to implant the specific device used.

MacMillan filed a motion for summary judgment. Nienhuser conceded that there was no viable negligence claim. A summary judgment hearing was held on the issues of battery and informed consent. The following evidence was presented at the hearing:

A pre-operation visit occurred on October 3, 2017, where MacMillan and Nienhuser discussed Nienhuser's left knee replacement surgery. Nienhuser told MacMillan he preferred that the "DePuy" device be installed on his left knee, as that was what was installed on his right knee earlier the same year. MacMillan told him he does not use the DePuy device in knee replacement surgeries and he advised Nienhuser that if he wanted the DePuy device he needed to find a different surgeon. MacMillan discussed using the "MicroPort" device in the knee replacement surgery instead of the DePuy device and Nienhuser agreed to using it.

After Nienhuser's pre-operation visit, his wife learned that MacMillan was going to use the MicroPort device in her husband's surgery, and apparently Nienhuser told her that he still preferred the DePuy device. Nienhuser's wife told her husband she would contact the office and make sure it was understood that he wanted the DePuy device used in his surgery.

On October 4, 2017, the day after the pre-operation visit, Nienhuser's wife emailed Steve Earl, a hospital employee with some type of responsibility for coordinating the details of the surgery. She told Earl that MacMillan tried to talk her husband into having a "different apparatus" put in his knee, but Nienhuser "stuck to his desire to have the [DePuy] knee system put in." Nienhuser's wife asked Earl to make sure her husband was able to have the DePuy device used in his knee surgery. Earl emailed back and told her he would make sure the surgical plan was clear with MacMillan.

In a subsequent email to Earl the same day, Nienhuser's wife stated that her husband told her MacMillan agreed to use the DePuy device, but she wanted to make sure this was the case.

Nienhuser's wife also testified in her deposition that she had telephone conversations with Earl, where she verified that the DePuy device would be used in her husband's surgery. She claimed Earl told her the DePuy device was not something the hospital normally had on hand, but he would make sure they had it for her husband's surgery.

On October 5, 2017, Earl informed MacMillan that Nienhuser's wife had contacted him and said she wanted her husband to have the DePuy device used in his surgery. MacMillan told Earl that he does not use the DePuy device in surgeries and if Nienhuser wanted that device he would need a different surgeon. MacMillan also told Earl to relay to Nienhuser's wife that if she and Nienhuser had questions about the surgery, they needed to schedule a meeting with him. Earl testified in his deposition that he relayed this message to Nienhuser's wife. Nienhuser and his wife did not schedule a meeting with MacMillan, and there was no evidence of any communication to MacMillan that the MicroPort device should not be used.

Nienhuser had left knee replacement surgery on November 1, 2017, and MacMillan implanted the MicroPort device. Prior to surgery, Nienhuser signed an authorization for surgical procedure acknowledging that MacMillan had advised him of the nature of the procedure, among other things, and that he consented to the procedure.

Following the hearing, the district court granted MacMillan's motion for summary judgment.

## ASSIGNMENTS OF ERROR

Our rules of appellate practice require that the appellant's initial brief include a section containing a "separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error." § 2-109(D)(1)(e). See *Swicord v. Police Stds. Adv. Council*, 309 Neb. 43, 958 N.W.2d 388 (2021). Nienhuser's brief does not contain a separate section assigning error to the district court.

## STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Strahan v. McCook Hotel Group*, 317 Neb. 350, 10 N.W.3d 187 (2024). Ordinarily, an appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See *id.* However, where a brief of a party fails to comply with the mandate of § 2-109(D)(1)(e), we may proceed as though the party failed to file a brief or, alternatively, may examine the proceedings for plain error. *Swicord v. Police Stds. Adv. Council, supra*. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

## ANALYSIS

As stated above, due to Nienhuser's failure to set forth assignments of error, we may proceed as though he failed to file a brief or, alternatively, may examine the proceedings for plain error. See *id.* The decision to proceed on plain error is at the discretion of the appellate court. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). We choose to review the record for plain error.

*Medical Battery Versus Informed Consent.*

In *Yoder v. Cotton*, 276 Neb. 954, 758 N.W.2d 630 (2008), the Nebraska Supreme Court distinguished claims asserting a lack of express or implied consent to medical treatment from claims asserting a lack of informed consent. *Yoder* explained that when the question is "'whether a physician overstepped [the] bounds of the patient's initial consent by failing to inform the patient of the risks of treatment,' it presents 'an issue of negligence properly addressed under a medical malpractice claim' based on lack of informed consent, rather than a battery." *Barber v. State*, 316 Neb. 398, 411, 4 N.W.3d 844, 855 (2024), quoting *Yoder v. Cotton*, 276 Neb. at 959-960, 758 N.W.2d at 636.

As such, under the framework discussed in *Yoder*, when plaintiffs assert that a physician provided medical treatment without their express or implied consent, they present a claim of battery. *Barber v. State, supra*. And when plaintiffs assert that a physician acted beyond the scope of any express or implied consent when providing medical treatment, they present an issue of informed consent properly addressed as a medical malpractice claim. *Id.*

- 3 -

*Battery Claim.*

We first consider whether there was plain error in the district court granting summary judgment in favor of MacMillan on Nienhuser's battery claim.

The tort of battery requires actual infliction of unconsented injury or unconsented contact with another. *Yoder v. Cotton, supra.* Consent for medical treatment need not be express in order to defeat a battery claim. See *id. Yoder* stated that "implied consent may be inferred from the patient's action of seeking treatment or some other act manifesting a willingness to submit to a particular course of treatment" and that "[i]f words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact." *Id.* at 958-59, 758 N.W.2d at 635-36.

Battery committed by a physician has been distinguished from claims of medical malpractice. *Yoder v. Cotton, supra.* Battery actions in the medical context have been limited to situations where the physician did not gain consent for his or her actions or greatly exceeded the scope of that consent, e.g., operating on the wrong limb. *Id.* In all cases, consent to a procedure defeated a battery claim. *Id.*

Having examined the proceedings, we find no plain error in the district court's decision to grant summary judgment on Nienhuser's battery claim. First, the evidence was undisputed that Nienhuser consented to left knee replacement surgery.

Second, Nienhuser consented to the use of the MicroPort device at the October 3, 2017, pre-operation visit. He was also told at that time that MacMillan does not use the DePuy device in knee replacement surgeries.

Third, Nienhuser did not withdraw his consent at any time before the surgery. The only communication after the pre-operation visit regarding what device would be implanted during the surgery was between Nienhuser's wife and Earl, whose role in Nienhuser's surgery is unclear, and between Earl and MacMillan. There was no evidence that Nienhuser, the patient, ever revoked his consent to using the MicroPort device in his surgery. Nienhuser appeared for surgery on November 1, 2017, and signed the authorization acknowledging that MacMillan had advised him of the nature of the procedure, among other things, and that he consented to the procedure. He knew at the time of surgery that MacMillan does not implant the DePuy device.

Fourth, regardless of Nienhuser's consent to the MicroPort device, the use of that device instead of the DePuy device does not "greatly exceed" the scope of the consent. Nienhuser received a left knee replacement as a result of the surgery and he did not present any evidence that the outcome of the surgery was any different than it would have been with the DePuy device or that he had been harmed in any way.

As stated above, we find no plain error in the district court granting summary judgment on the battery claim.

*Informed Consent.*

We next address whether there was plain error in the district court granting MacMillan's motion for summary judgment on Nienhuser's informed consent claim.

When plaintiffs assert that a physician acted beyond the scope of any express or implied consent when providing medical treatment, they present an issue of informed consent properly addressed as a medical malpractice claim. *Barber v. State*, 316 Neb. 398, 4 N.W.3d 844 (2024).

Informed consent is defined by Neb. Rev. Stat. § 44-2816 (Reissue 2021), which states:

Informed consent shall mean consent to a procedure based on information which would ordinarily be provided to the patient under like circumstances by health care providers engaged in a similar practice in the locality or in similar localities. Failure to obtain informed consent shall include failure to obtain any express or implied consent for any operation, treatment, or procedure in a case in which a reasonably prudent health care provider in the community or similar communities would have obtained an express or implied consent for such operation, treatment, or procedure under similar circumstances.

Moreover, Neb. Rev. Stat. § 44-2820 (Reissue 2021) provides the burden of proof in an action based on failure to obtain informed consent. It states:

Before the plaintiff may recover any damages in any action based on failure to obtain informed consent, it shall be established by a preponderance of the evidence that a reasonably prudent person in the plaintiff's position would not have undergone the treatment had he or she been properly informed and that the lack of informed consent was the proximate cause of the injury and damages claimed.

Under §§ 44-2816 and 44-2820, consent is informed when a doctor advises a patient of the risks in the same manner as doctors in similar localities and under similar circumstances ordinarily would. *Curran v. Buser*, 271 Neb. 332, 711 N.W.2d 562 (2006). However, before a plaintiff may recover any damages sustained, the plaintiff must prove by a preponderance of the evidence that a reasonably prudent person in the plaintiff's position would not have undergone the treatment if he or she were "properly informed" and that his or her injuries were proximately caused by the lack of informed consent. *Id.*

It has long been established that expert testimony is required to prove the standard of care in an informed consent case. See, *id*.; *Cerny v. Longley*, 270 Neb. 706, 708 N.W.2d 219 (2005); *Walls v. Shreck*, 265 Neb. 683, 658 N.W.2d 686 (2003); *Eccleston v. Chait*, 241 Neb. 961, 492 N.W.2d 860 (1992); *Jones v. Malloy*, 226 Neb. 559, 412 N.W.2d 837 (1987).

Nienhuser presented no expert opinion establishing what would ordinarily be explained in terms of risks and benefits of the procedure and the type of device to be used, or how MacMillan deviated from such standards. Because Nienhuser's informed consent claim required expert testimony to establish the applicable standard of care and breach thereof, and he provided none, summary judgment was proper on his claim and we find no plain error.

CONCLUSION

We find no plain error in the district court's order granting summary judgment in favor of MacMillan. Accordingly, we affirm.

AFFIRMED.